# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF HAMPDEN, SEPTEMBER TERM 1870, AT SPRINGFIELD.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,
Hon. JAMES D. COLT,      } Justices.
Hon. MARCUS MORTON,

## COMMONWEALTH vs. CHARLES WILLIAMS.

At the trial of an indictment for burglary, two witnesses testified that at the time of the burglary they identified the burglar by his voice with the defendant, whom they had only once before heard talk. The defendant requested the judge to rule that this identification was insufficient; but the judge refused, and instructed the jury that the similarity in the voice was a circumstance to be considered with the other circumstances in the case, but advised them not to convict on this circumstance alone. *Held*, that the defendant had no ground of exception.

At the trial of an indictment for burglary, evidence that the defendant was in the neighborhood the day before the night of the burglary; that he made inquiries about purchasing tobacco, in a manner which showed that they were pretexts; and that he had an apparent connection with two other strangers; is admissible, in connection with the testimony of the owner of the house entered, that the defendant was at the house on said day, and that the burglary was committed by two men; although the defendant admits at the trial that he was at the house on said day.

At the trial of an indictment for burglary, the owner of the house entered testified that he identified the burglar with the defendant by his pleasant voice; and the defendant then offered evidence that at the examination, before a justice, of one M., on suspicion of the

burglary, the said owner testified in reference to the defendant and his voice; that a witness afterwards testified that it was M. who had the pleasant voice; and that the said owner, being recalled, did not contradict this witness; but the defendant did not offer to show that said owner when recalled was asked as to the matter. *Held,* that the evidence was rightly excluded.

It is no ground of exception to the admission of the testimony of a witness, as an expert, on the question whether two letters were written by the same hand, that his experience has been in the comparison of promissory notes for the purpose of determining the genuineness of the signatures.

At the trial of an indictment for a burglary committed in the night time of December 2, it appeared that the defendant was at the place of the burglary during the day preceding that night; but, to prove an *alibi* at the time of the act, he introduced the testimony of several witnesses that they saw him, and talked and drank with him, at a ball in a distant place on the said night; that they were certain of the date because it was the night after a target excursion, which took place on December 2; and that the defendant, although expected, was not present with them on the excursion. *Held,* that the exclusion of declarations of the defendant, made to these witnesses at the ball, and tending to account for the fact of his being there consistently with the fact that he was at the place of the burglary during the day, afforded him no ground of exception.

INDICTMENT for breaking and entering the dwelling-house of Edwin H. Ball at Holyoke, on December 2, 1869, in the night time, with intent to steal.

At the trial in the superior court, before *Putnam,* J., Ball and his wife testified that, on the day before the night of the burglary, the defendant, whom they had never seen before, called at the house, and talked for some time with Ball ; that he had a very interesting, manly, pleasant, smooth, gentle, handsome voice, like that of one born in this country of foreign parents, " a York state voice ; " that between eleven and twelve o'clock that night they were awakened by a noise in their bed-room ; that a man at the side of the bed said, " Keep still, or you are a dead man. If you move, I 'll take your heart's blood. Now, Billy, work fast, take all the money. You at the window, if these folks move, shoot them ; " that the man then sprang from the room ; that they could not see him, but identified him at once by his voice as the defendant ; and that there were two men engaged in the burglary.

The defendant asked the judge to instruct the jury that " identification, by voice alone, of a person whose voice has been heard by witnesses but once, was insufficient and too uncertain, and no conviction could be had thereon, there being no other peculiarity

in the voice than as described in the evidence." The judge de
clined so to instruct the jury, and instructed them that the simi-
larity in the voice was a circumstance to be considered by them
with the other circumstances in the case, but at the same time
he advised them that they ought not to convict the defendant on
this circumstance alone, if no other circumstances tended to satisfy
them that the defendant was the man.

Several witnesses testified that they saw the defendant at vari-
ous places in the neighborhood, on the day preceding the night of
the burglary; that he made inquiries and statements about pur-
chasing tobacco, and said he was going to see some that day; but
that he did not go; and that he apparently had some connection
with two strangers, whom he met at a hotel. The defendant
objected to the testimony of these witnesses, and admitted at
the same time that he was at Ball's house on said day; but the
judge refused to exclude the testimony.

It appeared that, on the morning after the burglary, two men,
named Montrose and Stevens, were arrested on suspicion and ex-
amined before a trial justice. The defendant offered evidence
tending to show that at the examination Ball was called as a wit-
ness and testified in reference to the defendant and his voice;
that Oscar Ely testified, after Ball, that it was Montrose who had
the pleasant voice; and that Ball was afterwards recalled as a
witness, and did not contradict what Ely had testified to. But
the defendant did not propose to show that Ball was asked any-
thing about the matter, when he was recalled. The attorney for
the Commonwealth objected to the admission of the evidence,
and the judge excluded it.

The Commonwealth offered in evidence an anonymous letter
concerning the burglary, and also a letter admitted to have been
written by the defendant, and proposed to show, by comparison
of the manuscripts, that the same person wrote both. Henry S.
Lee testified that he was now treasurer of a savings bank, and
had been president of a bank; that he had had experience, in his
own business, in the comparison of handwriting in the bodies and
signatures of notes; that his business was principally in the com-
parison of signatures; that, about twelve years ago, for a period

of six or seven years he had been accustomed to compare the bodies as well as the signatures of notes, in the course of his business, for the purpose of determining the genuineness of signatures, though during the last four years he had done this very infrequently; and that "he did not consider himself an expert in the comparison of handwriting of instruments to testify, by which he said he meant that he did not consider himself an expert like Mr. Comer of Boston and others, but could satisfy himself." Charles Marsh testified that he had been cashier of a bank for three years, and had been also in a savings bank for three years; that a part of his business was the study of signatures; that he was accustomed to compare the bodies of notes and checks, but only for the purpose of enabling him to judge as to the genuineness of the signatures; that he had been quite careful in the examination of signatures and could rely on his own judgment. The defendant objected that neither of these witnesses was competent to testify as an expert, but the judge overruled the objection, and they both testified that in their opinion the letters were written by the same hand.

The defendant offered in evidence the depositions of John Felton, James Haynes, Thomas Fenton and Henry I. Benton, to prove an *alibi*. These deponents testified that on the night, and at about the hour of the burglary, the defendant was at a ball in the city of New York.

The following interrogatory was put to the several deponents: "If there was a dance or ball as aforesaid in said city, state whether or not the aforesaid Williams was present at said dance or ball, what time you first saw him, (be as particular as possible about the hour,) what you saw him do, whether or not you conversed or drank with him, and also state particularly anything which makes you certain of the date and that Williams was so present."

Felton answered: "Williams was at the ball. When I first saw him it was about half past one o'clock. I saw him during the ball having a few drinks. I conversed and drank with him. All that makes me certain of the date is the target company's excursion and the ball in the evening. Williams made a remark

to me [that he had come in on the New Haven train an hour or so before that.] I am certain Williams was present from that fact."

Haynes answered : " Williams was present at the ball. I first saw him that night, between twelve and one o'clock. I cannot specify the exact time, but it was nearer one o'clock than twelve. I conversed with him and drank with him several times. I remember the day, because it was the day of our target excursion. I remember Williams's presence, because he expected to turn out with us on the excursion [and often said during that night, that he was sorry that he was away and had done his best to attend the ball]."

Fenton answered : " I saw Williams at the ball. He was present there. I think it was about two o'clock of the morning of December 3 that I first saw him. I saw him dancing, I conversed and drank with him. I am certain of the date, because our target excursion was on December 2, and the ball was on the evening following, and [Williams stated frequently that he was sorry he had not been there to go on the excursion.] He was a member of the target company, and we were expecting him to go with us and help fill out the ranks."

Benton answered : " Williams was present at the ball. I first saw him, I think, about half past twelve o'clock. I saw him drinking at the bar. I conversed and drank with him. While drinking at the bar [he said he was sorry not to have been out with us on the excursion, but was glad to meet his friends at the ball.] These facts make me certain of the date."

The judge admitted the whole of the depositions except as to the conversations testified to between the different deponents and the defendant. These he excluded, but he allowed the fact that the deponents testified that they did converse with the defendant to go to the jury. The parts excluded are marked in brackets.

The jury returned a verdict of guilty, and the defendant alleged exceptions.

G. M. Stearns, (M. P. Knowlton with him,) for the defendant.
C. Allen, Attorney General, for the Commonwealth.

WELLS, J.   1. We are not prepared to agree to the legal proposition, contained in the defendant's prayer for instructions, that identification, by voice alone, of a person whose voice has been previously heard by witnesses but once, was insufficient and too uncertain, and that no conviction could be had thereon.   The voice is one means of recognition and identification.   The degree of certainty of identification by that means does not depend upon the ability of the witness to describe its peculiarities.   It is for the jury only to determine how much reliance should be placed upon such testimony.

But the court was not bound to rule upon that evidence, apart from the other circumstances tending to connect the prisoner with the offence charged.   The instructions upon this point were carefully given, and, to say the least, sufficiently favorable to the defendant.

2. The testimony of several witnesses, that they saw Williams at various places in the neighborhood, on the day preceding the night of the robbery; that he made inquiries and statements about purchasing tobacco, in a manner which indicated that they were mere pretexts; that he had apparently some connection with two other strangers whom he met at the hotel; was competent as circumstantial evidence in connection with the narration given by Ball.   The admission in court that the defendant was at Ball's house that afternoon could not deprive the government of the right to introduce the testimony from the witnesses, even if it had covered the whole ground of the testimony offered, which it did not.

3. The testimony of Oscar Ely, upon the examination of Montrose and Stevens before a trial justice, "that it was Montrose who had the pleasant voice," did not call for any contradiction or reply from Ball.   It does not necessarily contradict the testimony of Ball given upon the trial of Williams.   The evidence of Ball's omission to make any counter-statement before the trial justice, where he was a witness merely, and was not inquired of in relation to the matter, after Ely had testified, was properly excluded.

4. The witnesses, offered as experts, had had some practical experience in the comparison of handwriting.   There is no rule

of law fixing the precise amount of experience or degree of skill necessary to constitute an expert. All that is open to inquiry and proof at the trial. The judge must, in the first instance, pass upon the admissibility of the witness; and then, if admitted, the jury judge of the weight and credit to be given to the testimony. The question is one mainly of fact. It is only when there appears some error in law, in determining the question of admissibility; or when there is no competent evidence to prove proper qualification of the witness, that the decision of the presiding judge is reversed on exceptions. No such error or deficiency of proof appears in this case.

5. The portions, excluded from the depositions taken to prove an *alibi*, had a tendency to account for the fact that Williams was in New York at the time of the robbery, consistently with the proof that he was in Holyoke during the day previous; and thus to avoid the effect of a conflict with the greater part of the testimony for the government. They consisted entirely of the defendant's own declarations. It was the duty of the court therefore to exclude them, unless they were competent upon some legal ground and for some other purpose than as declarations.

The defendant contends that the declarations were competent to show the means of knowledge, and certainty of recollection, of the witnesses, both as to the fact of his presence at the ball, and as to the occasion or date of the interview. But the witnesses had testified to the fact of his presence at the ball; had certified their recollection by the circumstances of talking and drinking with him; had identified the occasion by the circumstances that it was a ball succeeding an excursion of a target company, upon the evening of the same day, and that Williams had failed to be present at the excursion, although expected to "help fill out the ranks." These circumstances sufficiently identify the occasion; enable the date to be fixed with certainty, and remove any question as to accuracy of recollection, if the witnesses are to be credited. It does not appear that the several witnesses testify of one and the same conversation. Each speaks of conversations with himself. Aside from the truth of the statements as declarations, the conversations did not furnish any connecting link between

other parts of the testimony, or show that the several witnesses were testifying of the same occasion, as in *Earle* v. *Earle*, 11 Allen, 1. They did not supply an additional or independent test of the correctness of the statements of the witnesses, as in *Holyoke Paper Co.* v. *Conklin*, 2 Allen, 326. They were not required in order to connect the occasion with another event, the date of which could be fixed with greater certainty, as in *Goodhand* v. *Benton*, 6 Gill & Johns. 481.

If offered as aids to recollection, or as showing a reason for remembering the facts stated, or by way of corroboration, such declarations might be admissible, if otherwise unobjectionable, but it would be as a matter within the reasonable discretion of the court; and no exceptions would lie to their exclusion. *Ashley* v. *Wolcott*, 11 Cush. 192. *Robinson* v. *Fitchburg & Worcester Railroad Co.* 7 Gray, 92.

In the present case, we think the exclusion of these declarations of the defendant was right and proper.

*Exceptions overruled.*