## COMMONWEALTH *vs.* JAMES A. COE.

Suffolk. June 15. — September 5, 1874. COLT & ENDICOTT, JJ., absent.

An indictment for cheating by false pretences charged that the defendant obtained money as a loan from a person by falsely pretending that a forged certificate of stock was a good, valid and genuine certificate of stock, and set forth the certificate at length. *Held*, that the fact that the certificate was made out in the name of the lender was no reason for quashing the indictment.

An indictment for cheating by false pretences, setting forth a certificate of stock as the false token with which the fraud was committed, need not set forth in what manner the certificate could.be used to deceive.

In an indictment for cheating by false pretences, the description of the property obtained as a " check and order for the payment of money " is sufficient, and the check need not be set forth at length.

An allegation, in an indictment for cheating by false pretences, that the defendant " obtained money as a loan with the intent to cheat and defraud," is sufficient.

A false representation, that a certificate of stock is good, valid and genuine, is not a representation as to the ability of the person making it to repay money obtained thereby, within the Gen. Sts. c. 161, § 54, requiring that the representation should be in writing.

An allegation in an indictment for cheating by false pretences, that a certificate of stock, which was the false token used, "was of the tenor following," is to be referred to the time when the false pretence was made; and it need not set forth indorsements on the back of the certificate.

In an indictment for cheating by false pretences, it is not necessary to set forth the fact, that the defendant gave his promissory note for the money at the time when it was obtained by the false pretences; and evidence at the trial that such a note was given, does not constitute a variance.

An allegation, in an indictment for cheating by false pretences, that a certificate of stock " was not a good, valid and genuine writing and certificate of stock, but was false, forged and counterfeit, and of no value," is not a descriptive allegation, and proof that a certificate purporting to be for one hundred shares of stock, is in fact a certificate issued for one share and subsequently altered, does not constitute a variance.

On the trial of an indictment for cheating by falsely pretending that a forged certificate of stock was genuine, evidence of the possession and use by the defendant of other forged certificates of stock about the same time, whether before or afterwards, is admissible on the question of guilty knowledge.

The fact that a forged certificate of stock was offered and received as security for a loan of money, is evidence upon which it is competent for a jury to find that the lender was thereby induced to part with his money; although the lender in reply to the question, if he did not rather trust the defendant than any security, testifies that he " had every confidence in him.

At the trial of an indictment for obtaining money by false pretences, the presiding judge in charging the jury suggested the inquiry whether the person defra ided

would have lent the money if he had known that the security offered, a certificate of stock, was forged and worthless; and then instructed them that, if he would not, and was in fact induced to make the loan by the delivery of the certificate, and his belief in its genuineness, and the jury find the other facts constituting the offence, it would be sufficient; and added: "And the fact, if it was a fact, that the defendant then entertained the purpose of repaying the loan at some future time, would not divest the act of its criminality." The defendant excepted to "this part of the instructions relating to the obtaining of money or property upon a loan, by means of false pretences." *Held*, that this exception could not be sustained.

It is no defence to an indictment alleging the obtaining of money by false pretences, that the person so obtaining the money intended to repay it, and evidence of ability to make the repayment is immaterial.

Where the property obtained by false pretences is a check for $7000, evidence that the check, which was given as for a loan of money, was drawn on a bank, that the drawer at the time made deposits in two banks and was in the habit of drawing on one of them, is sufficient to warrant the jury in finding that the check was of value.

Before a writing can be used as a standard of comparison of handwriting it must be proved that the specimen offered as a standard is the genuine handwriting of the party sought to be charged, and this question of its admissibility is to be determined by the judge presiding at the trial. So far as his decision is of a question of fact merely, it is final, if there is proper evidence to support it; and exceptions to its admission as a standard will not be sustained unless it clearly appears that there was some erroneous application of the principles of law to the facts of the case, or that the evidence was admitted without proper proof of the qualifications requisite for its competency.

INDICTMENT for cheating by false pretences. Trial in the Superior Court before *Aldrich*, J., who allowed a bill of exceptions in substance as follows:

The indictment contained two counts. On the first, which alleged an intent to cheat and defraud one Frank Shaw, the jury found that the defendant was not guilty. The second count, on which the defendant was found guilty, alleged that the defendant at Boston, on January 4, 1873, " being a person of an evil disposition and devising and intending by unlawful ways and means to obtain and get into his hands and possession the goods, merchandise. chattels and effects of the honest and good citizens of this Commonwealth, and with intent to cheat and defraud one John Ferris, and with the view and intent to effect the loan hereinafter mentioned, did then and there unlawfully, knowingly and designedly falsely pretend and represent to said John Ferris, that a certain paper writing and certificate which he said Coe then and there had and produced to said Ferris, and which was of tenor following, to wit:

" No. 59.        Eastern Railroad Company.        100 shares.

" Be it known that John Ferris of Boston is a proprietor of
one hundred shares in the capital stock of the Eastern Railroad
Company, subject to all assessments thereon, and to the provi-
sions of the charter and the by-laws of the corporation, the same
being transferable by an assignment thereof in the books of the
corporation, or by a conveyance in writing recorded in said books;
and when a transfer shall be made or recorded in the books of the
corporation and this certificate surrendered, a new certificate or
certificates will be issued.

" Dated at Boston this third day of January, A. D. 1873.

[Seal.]        " Thornton K. Lothrop, *President.*
                " John B. Parker, *Treasurer.*"

was then and there a good, valid and genuine certificate of owner-
ship of stock in said company, lawfully and duly issued and
signed by said Lothrop and Parker, and was then and there of
the value of ten thousand dollars.   And the said Ferris then and
there believing the said false pretences and representations, so
made as aforesaid by the said Coe ; and being deceived thereby
was induced, by reason of the false pretences and representations
so made as aforesaid, to loan and deliver, and did then and there
loan and deliver to the said Coe, upon the security and pledge of
the said certificate, then and there by said Coe delivered to said
Ferris as such security for said loan, the sum of seven thousand
dollars, one check and order for the payment of money of the
value of seven thousand dollars, one piece of paper of the value
of seven thousand dollars, of the proper moneys, goods, mer
chandise, chattels and effects of said Ferris.   And the said Coe
did then and there receive and obtain the said moneys, goods,
merchandise, chattels and effects of the said Ferris as such loan,
by means of the false pretences and representations aforesaid, and
with intent to cheat and defraud the said Ferris of the same
moneys, goods and merchandise, chattels and effects.   Whereas in
truth and in fact, said writing and certificate was not then and
there a good, valid and genuine writing and certificate of owner-
ship of stock in said company, duly and lawfully issued and signed
by said Lothrop and Parker, but was then and there a false,
forged and counterfeit writing and certificate, and was not then

and there of the value of ten thousand dollars, but was then and there of no value, all of which he said Coe then and there well knew. And so the jurors aforesaid upon their oaths aforesaid do say that the said Coe, by means of the false pretences aforesaid, on the said fourth day of January in the year of our Lord eighteen hundred and seventy-three, at Boston aforesaid, unlawfully, knowingly and designedly did receive and obtain from said Ferris the said moneys, goods, merchandise, chattels and effects, of the proper moneys, goods, merchandise, chattels and effects of the said Ferris, with intent to defraud him of the same, against the peace of said Commonwealth and contrary to the form of the statute in such case made and provided."

Before the jury were sworn the defendant filed a motion to quash the indictment, as follows :

" And, as to the second count, the defendant says there is therein no offence or crime formally and distinctly set·forth, in this :

" 1. That it does not appear thereof that the said Coe had or pretended, or claimed to have any, interest or property in said certificate set forth therein, or the property therein described, or could make any transfer thereof or give any title thereto, but the contrary thereof appears in said indictment.

" 2. Because, by said indictment, said certificate is described as the property of and certificate of said Ferris, and therefore said Ferris could not be deceived or defrauded by the delivery thereof to him.

" 3. Because said check or paper writing alleged to have been delivered by said Ferris to said Coe is not set forth as described.

" 4. Because the indictment does not set forth what is the tenor of the certificate alleged to have been delivered by the defendant."

The defendant, in addition to the above motion to quash, before the jury were sworn to try the issues arising upon said indictment, moved that said indictment be quashed, " because it is not sufficient, and does not set out an offence or crime committed by him, in this:

" 1. That it does not appear by said indictment that the defendant had any right, title or interest in, or pretended or claimed

to have any right, title or interest in, or any property whatever in the certificate of stock described in said indictment; nor that there was any way whereby the defendant could enable John Ferris, mentioned in said indictment, to obtain any property in or advantage from said certificate, other than he already at that time possessed; and thus he, said Ferris, could not be deceived thereby, nor have delivered anything of value upon the security thereof.

" 2. Because it appears by said indictment that said certificate was the property of said John Ferris, and that the said Ferris could not be defrauded by the delivery thereof to himself, nor by any representations regarding it.

" 3. Because it is not set forth in said indictment how, or in what manner, said Ferris could be deceived by the offer of said certificate, or any representations regarding the same.

" 4. Because said certificate by its terms, as appears in said indictment, was transferable only by conveyance in writing recorded in the books of the corporation by the said John Ferris, purporting to be the owner thereof, and the surrender of said certificate and the issue of a new certificate, or certificates; and thus it appears that the said Coe had no property in said certificate, and that the said Ferris could receive no benefit therefrom.

" 5. Because the check and piece of paper alleged to have been delivered to said Coe by said Ferris are neither of them set forth nor described.

" 6. Because in said indictment it is set forth that the said Coe obtained from said Ferris a loan only of the property therein mentioned, it not being alleged that the said Ferris was deprived of his property therein, and it is not alleged how he could be, or was, defrauded of his property therein.

" 7. Because the allegations of said indictment charge representations made relating to the means and ability of the defendant to repay, at some future day, a loan then obtained; and it is not alleged in said indictment that the representations made by the defendant were made in writing.

" 8. Also, because said indictment alleges that the described certificate was of a certain tenor, without setting forth what is its tenor."

The court overruled both motions, and the defendant excepted. At the trial, the attorney for the Commonwealth offered in evidence, as the certificate described in the second count, a certificate, similar to that set forth in this count, with blank transfers indorsed thereon. The defendant contended that said indorsements should have been set out in the indictment, and asked the court to rule that there was a fatal variance between the allegation and the proof offered. The court declined so to rule, and the defendant excepted.

It appeared in evidence that at the time of the delivery to Ferris by the defendant of the last named certificate, the defendant also delivered to said Ferris his, the defendant's, promissory note for the amount of said loan, payable three months from its date. The defendant asked the court to rule that the giving of the note and the note itself should have been set out in the indictment; and not being so set out, that there was in this respect a fatal variance between the allegations and proof. The court declined to make such ruling, and the defendant excepted.

It was proved that the certificate of stock delivered to Ferris was, when originally issued, a valid certificate for one share of stock in the Eastern Railroad Company, and that it had been subsequently altered, without the authority of the company, so as to read " one hundred shares " instead of " one share." The defendant contended that the certificate, having been originally duly issued as a certificate for one share, still remained a good and valid certificate for one share, and was of value, notwithstanding the alterations subsequently made without the authority of the company ; and asked the court to rule that in this respect there was a fatal variance between the allegations and proof. The court declined so to rule, and the defendant excepted.

During the trial the attorney for the government, for the purpose of proving guilty knowledge on the part of the defendant, offered to show that he had at other times than those mentioned in the indictment uttered other forged certificates of stock, some of them being certificates of stock in a corporation other than the one named in second count of the indictment. The defendant objected to this evidence. But the court ruled, that for the purpose stated above, evidence was competent to show that the defendant had uttered other forged certificates of stock, similar to

the one set forth in the second count, at or about the time he delivered the one named in this count to Ferris.

Several certificates of stock, shown by the evidence to have been altered and forged, numbered 117, 274, 389, and 9,316, were then introduced by the government, together with evidence as to the times when, and the persons to whom, these forged certificates were uttered and delivered by the defendant. To the admission of these certificates and evidence the defendant excepted. At the time of the trial indictments were pending against the defendant for forging or uttering said certificates.

It was proved that the certificate No. 59, set forth in the second count of the indictment, was delivered by the defendant to Ferris, January 4, 1873 ; that No. 5,558, set forth in the first count, was delivered to Shaw, April 23, 1873 ; that No. 117 was delivered to one Cary, in February or March, 1873 ; that No. 274 was delivered to the Third National Bank of Boston, January 31, 1873 ; that No. 9,316 was delivered to one Deshon, about the same time ; that No. 389 was delivered to Deshon, March 4, 1873. It was also shown that all these certificates were delivered by the defendant, to the several persons named, as collateral securities for loans made to him by said persons. It was further shown in evidence that certificate No. 5,558 was originally issued in the name of George Warner, for two shares, under date of April 16, 1873, and that the words " George Warner is " had been altered to " Warren & Co.," and the word " two " altered to " one hundred," and the figures in the date had been changed to " 23 " ; that certificate No. 59 was originally issued in the name of " John Ferrer," for one share, under date of August 7, 1872 ; that the word " Ferrer " had been altered to " Ferris " ; the word " hundred " had been written after the word " one," and the date changed to January 3, 1873. That all these changes in these certificates had been made after the certificates had been issued by the respective companies, and without their authority or permission or knowledge, and before they were uttered by the defendant. Certificate No. 117 was shown to have been issued in the name of W. Y. Coe, for one share, December 27, 1872, that the words " one share " had been changed to " eighty shares," and the name N. C. Cary substituted for that of W. Y. Coe. Certificate No. 274 was originally issued in the name of James

A. Coe, for two shares, under date of January 31, 1873, that the "two shares" had been changed to "two hundred shares," and "Third National Bank" substituted for "James A. Coe." Certificate No. 389 was originally issued to James A. Coe, for "one share," under date of February 25, 1873, and subsequently the "one share" had been changed to "fifty shares," the name "James Deshon" substituted for that of "James A. Coe," and the date changed to March 4, 1873. It was shown that all these alterations in the several certificates were made after the certificates had been issued by the several companies, and without their knowledge or authority, and before they were uttered by the defendant.

John Ferris was the only witness called to prove the representations and pretences made to him by the defendant at the time Ferris made the loan to him. He testified in substance as follows : I live in Boston ; know the defendant ; lent him money about January 4, 1873, and took a note for it. This is the note. I took it from the defendant. He gave me collateral. This certificate, No. 59, is I think the certificate he gave me. I didn't look at the number. I received it at the time I took the note. I gave him a check. I do not know where it is now. I have looked for it and cannot find it. It was for seven thousand dollars. At that time I kept an account at the Eliot Bank, and one at the City Bank ; and the bank on which I was then in the habit of drawing was, I think, the Eliot Bank. I put the certificate away among my papers in my safe. I did not alter the certificate. It appears now to be in the same condition it was in when I received it. On cross-examination the witness testified that he had been in the habit for some time of lending considerable sums of money to the defendant ; that on the occasion when the note above mentioned was given he went to the defendant and asked him to take some money of him. The cross-examination of this witness then proceeded as follows :

Ques. Did you make any inquiry into the security ? Ans. I did not.

Ques. Did you not rather trust him, knowing him, than any security ? Ans. I had every confidence in him.

Ques. And you went to him, and asked him if he would take some money from you, and he said he would ? Ans. I think I gave him the check in his own office.

Ques. And then did he give you the note at the time you gave him the check ? Ans. Yes, sir.

Ques. Was there anything said by you or by him as to the security, except that he handed you out a paper after you had made the bargain ? Ans. Nothing, sir.

Ques. Then the transaction, if I understand it, is substantially this : You had some money to put at interest ; you went to Coe and asked him to borrow the money ; he gave you a note and this security, and you took them and put them away ? Ans. Yes, sir.

Ques. Now I want to put you the question : Did you believe then, or do you believe now, that Mr. Coe got this money from you with the intent to defraud you ? Ans. I do not.

The defendant's note to Ferris for the $7000 loan was dated January 3, 1873, payable three months from date. The defendant offered evidence to show that he paid all his liabilities as they fell due down to the date of his arrest, May 14, 1873 ; that at all times after the giving of said note to Ferris down to the time of his arrest, and always before, he had met his engagements with promptness ; that he had the means to pay all his debts as they became due in the ordinary course of business ; that he paid one of $80,000 on May 13, the day before his arrest, and that he had then $40,000 left on deposit, and that at the time of his arrest he had a large amount of property, and was engaged in a prosperous business. This evidence was objected to by the attorney for the government, and ruled out by the court, to which ruling the defendant excepted. The defendant did not in any part of his offer of evidence offer to prove, that at the time he obtained the loan from Ferris he was solvent, and had property in his own right, sufficient to pay all his debts.

The loan from Ferris to the defendant, as appears by the testimony, was made by the delivery of the lender's check to the defendant for the sum of $7,000, being the same sum for which the defendant at the same time gave his note to Ferris. The defendant asked the court to rule that this was not evidence of the delivery of anything of value to the defendant. The court declined so to rule, but submitted it as evidence to the jury.

The defendant objected to the admission in evidence of the certificate described in the first count of the indictment, as issued to Warren & Co. ; but it was admitted and the defendant excepted.

The government proposed to use the promissory note delivered by the defendant to Ferris as furnishing a standard of comparison to show that the alterations in the two certificates set forth in the indictment were in the handwriting of the defendant, as bearing upon the question of his guilty knowledge of said alterations. The defendant objected to such use of the note ; but the court ruled that the note having been delivered by the defendant as his own, its genuineness was sufficiently proved to authorize its use as such standard of comparison, the defendant having neither offered, nor proposed to offer, any evidence in denial of the claim of the government that the writing in the note was the handwriting of the defendant.

At the close of the evidence, the counsel for the defendant requested the court to direct a verdict of acquittal on the second count, contending that the evidence was not sufficient, in any view of it, to authorize the jury to find the defendant guilty. The court declined to comply with this request, but submitted the case to the jury upon the evidence with the following instructions, (first reading to them Gen. Sts. c. 161, § 54, upon which the indictment is founded.)   Full instructions, not now objected to, were given in relation to the first count, and then the attention of the jury was called to the second count, and they were instructed that, to authorize a conviction on this count, they must be satisfied beyond all reasonable doubt :

" *First.* That the defendant, as alleged in this count, did unlawfully, knowingly and designedly falsely pretend and represent to said Ferris that the certificate therein described was a good, valid and genuine certificate of stock, and was of value as set forth in the count.

" *Second.* That said certificate was not a good, valid and genuine certificate of stock, but was a false, forged and counterfeit one, and was of no value.

" *Third.* That said Coe knew at the time he delivered the said certificate to Ferris that said pretences were false, and that said certificate was not valid and genuine, and of value, but that it was a false, forged and counterfeit certificate, and was of no value.

" *Fourth.* That said Ferris believed said false pretences, and was deceived thereby, and was induced by reason of the same to

loan and deliver, and did loan and deliver, his order or check to said Coe upon the security and pledge of said certificate as set forth in said second count.

" *Fifth.* That the defendant designedly made said false pretences, and obtained said loan and property of said Ferris as set forth in said count, with intent to cheat and defraud said Ferris. That if the jury, upon all the evidence, had any reasonable doubt of the affirmative proof of any one or all of these propositions it would be their duty to acquit the defendant."

The jury were further instructed, that a false pretence within the meaning of the statute which had been read to them might be defined to be a representation of some ˚fact or circumstance calculated to mislead which is not true ; that it must relate to some past or existing facts ; that to give the false pretence a criminal character, the party making it must know it to be false, and must make it with an intent to cheat and defraud ; that such false pretence may be made orally, or it may be made in writing.

That the false pretence set out in this second count being that the certificate therein described was, at the time of said delivery, a good, valid and genuine certificate of ownership of stock, &c., and of the value of seven thousand dollars, if the defendant, knowing that certificate to be a false and forged one, and of no value, delivered it to Ferris as a valid and genuine certificate and of value, for the purpose of obtaining from Ferris a loan of money, and Ferris received it believing it to be valid and genuine, and of value, that would constitute a false pretence, even though the defendant at the time of the delivery made no oral representations respecting the character of the certificate. The court stated to the jury that if upon all the evidence they should find the certificate was a false, forged and counterfeit one, it would be a matter of some consequence, as bearing upon the question of the guilty knowledge of the defendant, to determine whether the alleged alterations in the certificate were in the handwriting of the defendant or not, and upon this question as to whether the defendant made these alterations, the court said to the jury that the district attorney had called their attention to the signature of the note, and had asked them to say whether the handwriting in these alterations, if they are such, did not correspond with the signature in the note, and that the use of the note was objected

to by the defendant. One of the counsel for the defendant, in-terposing at this point of the charge, said, " The objection I made was not that. The mere passing of the note, while it may be evidence of signature, would not be evidence that the balance of the note was in the handwriting of the defendant, as part of the note was printed ; the objection was to comparing the word ' January.' "

The presiding judge resumed and proceeded to say to the jury that in determining the question as to whether the defendant did or did not know that this was an altered and forged certificate, it was of importance for them to ascertain, if they could from the evidence, whether or not he made the alterations himself, and to this end comparison had been instituted between the hand-writing in this note, and the altered parts of this certificate.

" The rule of law upon this subject is, that before any writing can be used as a standard of comparison, it must be shown, by clear and undoubted testimony, that the specimen offered as a standard is the genuine handwriting of the party sought to be charged. If he recognizes it himself as his handwriting, then it may be used. And I instruct you in this case that, for the pur-pose of comparison, the signature of this note may be used ; and as the district attorney called your attention to the claimed simi-larity between the handwriting in the word ' January ' in the date of the note and the altered parts of this certificate, that also may be used by you as a standard of comparison as well as the signature of the note, for it is admitted that the defendant de-livered this note to Ferris as his, the defendant's, own promissory note."

The word " January" in the date of the note was written, and not printed. These instructions, respecting the use of the note as a standard of comparison, were excepted to by the defendant.

In regard to the other forged certificates of stock offered by the government, and claimed upon the evidence to have been in the possession of the defendant, and passed by him to other parties as collateral securities for loans obtained by him, the court instructed the jury that these were not admitted for, nor could they be used as evidence to show that the defendant had committed other offences, or that he had obtained money by false pretences of other persons, in order to lead to the inference that

he would be more likely to commit the offence charged against him in this indictment; but that the evidence was admitted solely upon the ground that it might tend to show that the defendant had guilty knowledge of the fraudulent character or forgery of the certificates named in the second count of the indictment; and that before the jury would be authorized to make even this use of these certificates, they must be satisfied by the evidence in relation to them that they are false and forged certificates, and that the defendant passed them knowing them to be such.

In further instructing the jury as to the only use they would be authorized to make of these other certificates, and the evidence relating to them, the presiding judge read to them the language of Chief Justice Bigelow, in delivering the opinion of the court in the case of *Commonwealth* v. *Shepard*, 1 Allen, 575, 581, upon the use to be made of this species of evidence, and the care and caution to be observed in its application; and that if, upon all the evidence, the jury find that the defendant knew this to be an altered and forged certificate when he delivered it to Ferris, they might next inquire with what intent he delivered the certificate to Ferris. For, before they could convict the defendant, they must further find, upon the evidence, that he delivered the certificate to Ferris with intent to cheat and defraud him by means of said false pretences, fraudulently to obtain the loan from said Ferris as set forth in the indictment. In this part of the charge, the jury were instructed that to obtain, by false pretences, the money or property of another upon a loan, is an offence against the statutes, as well as to obtain, by such pretences, the money or property of another with no intention or promise to repay it at any time; in other words, a false representation, designedly and knowingly made as to the security offered for a loan of money, is an offence within the statute punishing the obtaining of property by false pretences. But that the situations of the parties, and the proved facts existing at the time of the transaction, should all be considered by the jury, with all the other evidence in the case, in determining the question as to the fraudulent intent of the party to be charged. The presiding judge then proceeded as follows:

" The offence set forth in this indictment consists in obtaining, by false pretences, with intent to defraud, and not by contract, the property of another. And the criminality of the act is to be

determined by the proved facts and situation of the parties at the time of the transaction. What the party defendant intended to do afterward cannot purge the act of its criminality, if it was a criminal act at the time of its commission.

" Suppose, in the present case, that Ferris had known at the time the certificate was delivered to him by the defendant, that it was a forged and worthless piece of paper, would he have loaned his money or delivered his check as he did ? If he would not, and was in fact induced to make the loan by the delivery of the certificate and his belief in its genuineness and value, and the jury further find, upon the evidence, that the certificate is false and forged, and that the defendant knew it to be so at the time of its delivery by him to Ferris, and he delivered it with the fraudulent intent to obtain a loan of money from Ferris thereby, and by that means did obtain the loan, that would constitute the offence set forth in the second count of the indictment. And the fact, if it was a fact, that the defendant then entertained the purpose of repaying the loan at some future time, would not divest the act of its criminality, or give to it the character of an innocent transaction."

This part of the instructions, relating to the obtaining of money or property upon a loan, by means of false pretences, was excepted to by the defendant.

The jury were further instructed, if they should find that the certificate was an altered and forged one, that the defendant knew it to be such at the time he delivered it to Ferris, and that he delivered it to him as a genuine one, and with intent to defraud Ferris; they must also find upon the evidence, before they would be authorized to convict the defendant, that Ferris was deceived by such false representation as to the character of the certificate, and was induced thereby to make the loan to the defendant, and did make it, as set forth in the indictment; and that the defendant did, by such false pretence, obtain the check and order of said Ferris, as charged in the indictment. Because, although the false pretence may have been made, and made with intent to defraud Ferris, and although the defendant obtained the property of Ferris, yet, if the false pretence was not the inducing cause, leading Ferris to make the loan and part with his property, the defendant cannot be convicted. But is not necessary to show

that the false pretence was the sole inducing cause that operated upon the mind of Ferris to lead him to part with his property; the fact that Ferris had formerly loaned money to the defendant which he repaid, that he had confidence in the defendant, that the defendant gave his promissory note at the time of this loan for the amount of the loan, might have had more or less influence upon the mind of Ferris to induce him to make the loan; still, if he would not have made the loan but for the delivery of the certificate by the defendant, and his, Ferris's, belief in its genuineness and validity, — if this had a decisive influence in the matter, and determined Ferris to make the loan, that will make out this part of the charge against the defendant, although, as before stated, there may have been other contributing causes operating to induce Ferris to make the loan and part with his property.

In conclusion, the jury were instructed that before they would be authorized to convict the defendant, they must find upon the evidence, 1st, That the defendant intended to defraud Ferris. 2d. That Ferris was actually defrauded. 3d. That the defendant made or used a false pretence or pretences, as set forth in the indictment, for the purpose of prepetrating the fraud. 4th. That the fraud was actually accomplished by means of the false pretence made use of for that purpose; that is, that the false pretence was the cause which induced Ferris to part with his property, as charged in the second count, and that if the jury had any reasonable doubt as to the proof of any one of these propositions, it would be their duty to acquit the defendant.

*B. Dean,* for the defendant. 1. The defendant was entitled to have the indictment quashed for the several reasons stated in his motions therefor. Other statements are required than the merely setting forth a copy of the certificate of stock belonging to Ferris, to describe the crime attempted to be charged. *Commonwealth* v. *Ray,* 3 Gray, 441, 448. *Commonwealth* v. *Hinds,* 101 Mass. 209. The indictment does not show how Coe could pledge stock belonging to Ferris, nor how property already belonging to Ferris could secure a loan from Ferris, nor that Coe had any right, title or interest in the stock or certificate, or any control over the property described therein. If the certificates were in the name of Coe, it might have been a pretence of property in him, and lead to the belief that he owned the property,

and had authority to pledge it, and give the pledgee a right to a transfer of the stock; but standing in other names, other allegations than any contained in the indictment are requisite to make out an offence. The check and piece of paper ought to be set forth and described in the indictment, otherwise it cannot appear that anything of value was delivered. The court cannot say that the check was of any legality or value. It is not alleged that the check was paid.

The indictment should be quashed because it alleges the obtaining a loan only of property, or property as and for a loan, not that Ferris was deprived of his property, nor how he could be. The indictment should have been quashed because the representations related entirely to the ability of the defendant, if it can be ascertained by the indictment that the defendant had claimed any property in the stock, and there is no allegation that the representations were in writing. Gen. Sts. c. 161, § 54. The indictment sets forth the tenor of the certificate as it was at some past time, and not the tenor as it is. This is at variance with all the forms and practice, and is bad pleading. It does not fix the date when the certificate was of the tenor described. The giving of the note and the note itself ought to be set out as well as the certificate; they were one transaction, and the note was given for the loan as well as the certificate, and the allegation that the loan was obtained on the faith of the certificate, when it was certainly as much upon the note, is erroneous and a variance. The indictment does not correctly describe the offence, and this misdescription is a variance. The indorsement upon the back of the certificate should be set forth; the indictment undertaking to set it forth according to its tenor. The indictment describes the certificate as a certificate of no stock and of no value, whereas it is of stock and of some value; it is good for one share, and of one hundred dollars' value. This is a fatal variance. *Commonwealth* v. *Stone*, 4 Met. 43. *Commonwealth* v. *Ray*, 3 Gray, 441, 449. The offences are therefore not identical, because the conviction on this indictment could not be successfully pleaded to an indictment for the offence actually proved, the evidence necessary to one not supporting the other. 2 East P. C. 519. *Commonwealth* v. *Roby*, 12 Pick. 503. *Rex* v. *Vandercomb*, 2 Leach, 816. The identity of the offences can only be proved by the record. *Rex* v. *Taylor* 3 B. & C. 502; *S. C.* 5 Dowl. & Ry. 422.

2. The admission of the other forged certificates in evidence was erroneous and calculated to unfairly prejudice the defendant. *Rex* v. *Wylie*, 2 Bennett & Heard Lead. Crim. Cas. (2d ed.) 26, and note. *Jordan* v. *Osgood*, 109 Mass. 457. *Butler* v. *Watkins*, 13 Wall. 456. There is no evidence but this and the comparison of the writing in the certificate with an unproved standard tending to prove that Coe knew the certificate to be forged.

The certificate to Ferris was delivered January 4, 1873; all the others were delivered afterwards, the nearest date being twenty-six days after, and all, but one, certificates of other corporations. Proof of the uttering of a forged certificate on the Old Colony Railroad, on March 4, can have no necessary tendency to prove knowledge of the forgery of an Eastern Railroad certificate on January 4 previous. *Rex* v. *Taverner*, 4 C. & P. 413, note. This "dangerous species of evidence" has never been carried as far as in this case. It is an attempt to prove a case admitted weak by another weak case, to strengthen weakness by weakness. And in this case by subsequent weak events having no connection whatever with the facts on trial. Indictments are pending upon each certificate.

3. There was no evidence that John Ferris was induced to part with his money relying upon the security. There was nothing said about the security. It was delivered after the bargain was made. Ferris had every confidence in Coe, and never believed Coe intended to defraud him. There was no representation as to the value of the property. This is all the testimony, and is not sufficient. "Whatever it is necessary to set forth in an indictment must be distinctly averred by a proper affirmative allegation, and not by way of inference or argument merely. This is an elementary rule in criminal pleading." *Commonwealth* v. *Lannan*, 1 Allen, 590, 591, per Hoar, J. These averments must be sustained by proof. Every allegation must be proved. The law does not infer that one allegation is proved upon proof of the others; each must be supported by evidence. The law does not infer that Ferris made the loan relying upon the security, when he received it because it was offered him, after the completion of the bargain for the loan. *Rex* v. *Dale*, 7 C. & P. 352. The same result would have followed if Ferris had been entirely uncertain as to the effect of these representations. The false pretence must be shown

to have had a decisive influence on his mind, which was not the fact in this case. *Commonwealth* v. *Drew*, 19 Pick. 179.

4. The ruling that if the defendant, at the time he obtained the money as a loan, intended to repay it, this would not divest the act of its criminality; and the exclusion of evidence of the defendant's ability to pay, and of his intention to pay, were erroneous. *Commonwealth* v. *Jeffries*, 7 Allen, 548. *Commonwealth* v. *Hersey*, 2 Allen, 173, 180. *Commonwealth* v. *Stone*, 4 Met. 43. *Commonwealth* v. *Drew*, 19 Pick. 179. 2 Whart. Crim. Law, 1445. *Gentry* v. *State*, 3 Yerg. 451. *Rex* v. *Williams*, 7 C. & P. 298. In the latter case, the getting possession of goods by false pretences to enable the defendant's master to collect a debt, was held not to be an intention to defraud. The presiding judge should have ruled that there was no evidence that the check of Ferris was of value, and the certificate issued to Warren & Co. should have been excluded.

5. The admission of writing in the body of the note as a standard of comparison for the purpose of proving knowledge ought to have been excluded. The note was partly in print and partly written, and was signed by the defendant. It was delivered as the contract of the defendant. Such delivery is no proof that the body of the note was in his handwriting. It was equally his contract and equally binding, whether written by him, or by some one else; and therefore the fact that it was his contract is of no effect whatever. Such a ruling would make competent the entire written contents of every deed, will, contract or writing of any kind competent to be used as a standard of comparison, to prove the handwriting of the contractor, and would overthrow all the law upon this subject.

6. The presiding judge erred in instructing the jury to consider whether the defendant would have lent the money if he had known the certificate to have been forged. That is not the question at all. Perhaps he would not, because his confidence in the defendant would have been overthrown, just as much as if he had been told many other things of the defendant, whether true or false. Whether he would have made the loan under such circumstances has no bearing whatever upon the question whether he actually relied upon the security in making the loan.

7. The court may think the indictment should be construed as alleging that the whole transaction of procuring the loan was a pretence to obtain the money of Ferris with the intent to defraud him of it. This is the only construction that can sustain the indictment, for if the allegation goes no farther than that a loan was intended by the defendant, then the fraud is, negatived by the allegation, for Ferris wanted to make the loan, but did not want to be deprived of his property. If the defendant got the money or check of Ferris, to return it when Ferris wanted it, there was no fraud as to Ferris. If the loan was a part of the pretence, and the defendant intended to cheat Ferris of his property, and such is the meaning of the indictment, then the instructions of the judge were wrong, for he ruled that to obtain a loan with the intention of repaying it according to the agreement, satisfied the allegations of the indictment.

*C. R. Train,* Attorney General, & *W. G. Colburn,* Assistant Attorney General, for the Commonwealth.

WELLS, J. The indictment alleges that the defendant falsely pretended that a certain certificate of shares of corporate stock was good and genuine and of value as security for a loan of money which Ferris was induced to make to him thereon. The pretended certificate is set forth, and purports to be a certificate that the said John Ferris is the owner of the shares of stock which it represents.

1. One objection raised by the motion to quash is that the indictment does not show how Coe could pledge such stock, or use it to secure a loan from Ferris, or in any way defraud Ferris by means of it; Ferris being already the apparent owner. The transaction represented by the indictment, if genuine, would be simply that the borrower prepares his security by causing the shares of stock, whether owned by himself or procured from others for the purpose is immaterial, to be transferred to the name of the proposed lender, and a certificate issued accordingly. Upon procuring the loan, the delivery of the certificate completes the security. The certificate, although previously made in the name of the lender, does not become his in fact until the loan has been perfected and the certificate delivered to him in pursuance of its purpose. If the certificate is forged, or false and fraudulent in its preparation, it is manifest that he is defrauded when induced to

take it as genuine and advance money in reliance upon it. The offer of the certificate for such a purpose is a representation that it is what it purports to be upon its face. *Cabot Bank* v. *Morton*, 4 Gray, 156. *Commonwealth* v. *Stone*, 4 Met. 43. The indictment sufficiently sets forth in what manner Ferris was defrauded by means of the certificate.

2. The certificate is an instrument complete in itself, and requires no further allegations to fully set forth the right or contract of which it is a symbol, as was necessary in *Commonwealth* v. *Ray*, 3 Gray, 441, and *Commonwealth* v. *Hinds*, 101 Mass. 209. And besides, this offence consists in the use of false tokens, and not the forgery of a written instrument.

3. It is unnecessary that the indictment should set forth in its terms, or by description, the check received for the loan. It is presumed to have been given and received as payment of the sum of money agreed to be lent. Its designation as a " check and order for the payment of money " sufficiently indicates its character ; and as a description of the property obtained by the false pretences, would be good. *Commonwealth* v. *Brettun*, 100 Mass. 206. But there is also in the indictment an allegation that the defendant did obtain the sum of seven thousand dollars, of the property of said Ferris.

4. It is indeed alleged that the defendant procured, and Ferris was induced to part with, the money as a loan only. But it is also alleged that he thereby did obtain it with intent to cheat and defraud. If so obtained, it is none the less a fraud because obtained in the form of a loan. *Commonwealth* v. *Lincoln*, 11 Allen, 233.

5. Such representations relate only to the validity and value of the security, and not to the means or ability of the party to pay ; and are therefore not within the exception requiring a writing. Gen. Sts. *c.* 161, § 54.

6. The allegation that the certificate " was of the tenor following," must be referred to the time when the false representation was made, of which it constitutes the main part. The copy correctly sets forth its tenor.

As to the objections taken at the trial :

1. The indorsements upon the certificate form no part of it. They are not required to be set out, either as a part of the means

of deceit, or as a description of the false token used. Their appearance upon the certificate when produced does not therefore occasion a variance.

2. It is only necessary that the indictment set out the false representations upon which the property was obtained. That a genuine note was given is a matter of evidence, bearing upon the question whether the money was in fact obtained by means of the false certificate. The note forms no part of the offence charged, either by way of description or otherwise; and no allegation in regard to it is necessary. The offence is the same, with or without the presence of that fact. No variance comes from its appearance in the evidence.

3. The allegation of the indictment that the certificate was not a good, valid and genuine writing and certificate of ownership of stock, but was false, forged and counterfeit, and of no value, is sustained by the evidence. Even if it might have been of some value as a means of securing to the holder the one share, for which it was originally issued as a genuine and valid certificate, proof of such value does not constitute a variance. It is not a descriptive allegation.

4. Evidence of the possession and use of other altered and false certificates by the defendant, about the same time, whether before or afterwards, was competent to show that his possession of those, for the use of which he was indicted, was not casual and accidental. They were all between the dates of the transactions charged in the two counts. They were admitted and allowed to be used only to show guilty knowledge. For this purpose the evidence was admissible; and the instructions sufficiently guarded its use. *Commonwealth* v. *Stone*, 4 Met. 43, 47. *Commonwealth* v. *Price*, 10 Gray, 472. *Commonwealth* v. *Edgerly*, 10 Allen, 184.

5. The fact that the certificate was offered and received as security for the loan furnishes some evidence upon which it was competent for the jury to find that Ferris was thereby induced to part with his money. It is not necessary that there should have been any explicit declaration or express words to that effect, at the time of the negotiation. It was for the jury to determine how far the testimony of Ferris, that he " had every confidence in " the defendant, in reply to the question if he did not rather trust

Coe than any security, was a denial of reliance upon the security.

6. The instruction upon this last point would be objectionable if it bore the significance which the defendant ascribes to it. The presiding judge suggested the query, whether, if Ferris had known it to be a forged and worthless piece of paper, he would have made the loan as he did; and then proceeded to say, " If he would not, and was in fact induced to make the loan by the delivery of the certificate; and his belief in its genuineness and value," and the jury find the other facts constituting the offence, it would be sufficient; adding also, " And the fact, if it was a fact, that the defendant then entertained the purpose of repaying the loan at some future time, would not divest the act of its criminality."

The judge cannot fairly be supposed to have intended, by these propositions, to suggest the inquiry whether Ferris would have made the loan if he had known or supposed that Coe was guilty of fraudulently altering the certificate which he offered to him for security. Nor can we suppose that the jury would understand it in that way. If the attention of the judge had been called to the possible danger that the jury might so understand and misapply his remarks, they would undoubtedly have been qualified and explained. But there was no suggestion of the kind at the time; and no exception appears to have been taken to the instructions in this respect. On the contrary, the exception to this part of the instructions was expressly limited to that which related to " the obtaining of money or property upon a loan." The objection therefore, as now made, ought not to prevail.

7. The offence consists in obtaining property from another by false pretences. The intent to defraud is the intent, by the use of such false means, to induce another to part with his possession and confide it to the defendant, when he would not otherwise have done so. Neither the promise to repay, nor the intention to do so, will deprive the false and fraudulent act in obtaining it of its criminality. *Commonwealth* v. *Tenney*, 97 Mass. 50. *Commonwealth* v. *Mason*, 105 Mass. 163. The offence is complete when the property or money has been obtained by such means; and would not be purged by subsequent restoration or

repayment.   Evidence of ability to make the repayment is there-
fore immaterial and inadmissible.   The possession of the means
of payment is entirely consistent with the fraud charged.   The
evidence offered on this point did not touch the question of falsity
and fraud of the means by which the loan was obtained ; and was
properly rejected.

8.  The evidence would warrant the jury in finding that Ferris
had money deposited to his credit at the bank where he kept his
account, and therefore that his check was of value.

9.  The only question raised by the exceptions in regard to
which any considerable difficulty has been felt by the court, is
that upon the admission of the writing in the body of the note
given for the loan, as a standard of comparison of handwriting, by
which to show that the alterations in the certificate were made by
the defendant himself.

In his instructions to the jury the judge announced the correct
rule of law, as maintained in this Commonwealth ; that " before
any writing can be used as a standard of comparison, it must be
shown, by clear and undoubted testimony, that the specimen of-
fered as a standard is the genuine handwriting of the party sought
to be charged."   He then proceeded to say that not only the sig-
nature, but the word " January," in the written date of the note,
might be used for that purpose ; assigning as a reason, " for it is
admitted that the defendant delivered this note to Ferris as his,
the defendant's, own promissory note."   This was after his at-
tention had been called to the difference in the proof or admis-
sion as affecting the signature and as affecting the body of the
note.

The defendant's counsel rightly contends that the mere fact
that the defendant delivered the note as his own would not prove
that any part of it, except the signature, was his own handwrit-
ing, so as to make it a proper standard of comparison.   But it is
to be observed that the question, as thus presented in connection
with the instructions to the jury, related only to the point of ad-
missibility.   The attention of the court was called to the extent
of the previous ruling admitting the note as a standard of com-
parison ; the counsel insisting that only the signature had been
sufficiently proved to be submitted to the jury.   The court ruled
that the body of the note was also shown to be the defendant's

writing, sufficiently to be considered by them. No point was made and no instructions asked as to the province of the jury in dealing with the evidence as laid before them, or the effect or weight to be given to it. The question then is not of the suf-·ficiency of the reason given at that time by the judge for his rul-·ing, but of the correctness of the ruling itself. We think that from the whole bill of exceptions taken together, it does not appear that the ruling of the judge was based solely upon the fact of delivery of the note by the defendant. From the testimony of Ferris it appears that having the money to lend he went to the defendant's office and offered to lend it to him; and that the defendant then and there gave him the note and delivered to him the pretended security. The natural inference would be that the note was written at that time. Whether any one else was present does not appear. No one but Ferris was called, on either side, to testify in regard to the interview or the preparation of the note. What occurred during the trial, either in the manner in which the evidence came in or in the discussions or statements of counsel in regard to the preparation of the note, and the existence or non-existence of other evidence upon that point, does not appear. But it is manifest that the unreported occurrences of the trial might give important significance to that which appears to be slight evidence as reported from the verbal testimony of the witness.

Upon the proposition of the government to use the promissory note as a standard the objection was general, not distinguishing between the signature and the other written portions of the note. In admitting it for that purpose, the court assign this as a reason for the ruling, in addition to the proof of delivery, to wit, "the defendant having neither offered, nor proposed to offer any evidence in denial of the claim of the government that the writing in the note was the handwriting of the defendant." This suggestion indicates that, in the view of the presiding judge, the failure to produce any evidence on that point, when such evidence, if it existed, would have been within the knowledge and control of the defendant, left the inference from the testimony of Ferris, that the note was prepared and dated by the defendant at the time of the loan, conclusive as a matter of fact.

Upon the question whether a given writing or written word is sufficiently proved to have been written by the defendant to allow

it to be submitted to the jury as a standard of comparison, the judge at the trial must pass in the first instance. So far as his decision is of a question of fact merely, it must be final, if there is any proper evidence to support it. As in all questions of that nature, exceptions to the ruling at the trial will be sustained only when they show clearly that there was some erroneous application of the principles of law to the facts of the case, or that the evidence was admitted without proper proof of the qualifications requisite for its competency. *Foster* v. *Mackay*, 7 Met. 531. *Rich* v. *Jones*, 9 Cush. 329. *Gorton* v. *Hadsell*, 9 Cush. 508. *Quinsigamond Bank* v. *Hobbs*, 11 Gray, 250. *Commonwealth* v. *Mullins*, 2 Allen, 295. *Doud* v. *Hall*, 8 Allen, 410. *Lake* v. *Clark*, 97 Mass. 346. *Commonwealth* v. *Morrell*, 99 Mass. 542. *Gott* v. *Adams Express Co.* 100 Mass. 320. *Presbrey* v. *Old Colony Railroad*, 103 Mass. 1. *O' Connor* v. *Hallinan*, Ib. 547. *Gossler* v. *Eagle Sugar Refinery*, Ib. 331. *Commonwealth* v. *Williams*, 105 Mass. 62. *Lawton* v. *Chase*, 108 Mass. 238. *Nunes* v. *Perry*, 113 Mass.

Considering the rule of law laid down at the trial, we think the judge must have been satisfied from the evidence and the course of the trial, and found as a fact, that the written part of the body of the note was in the handwriting of the defendant ; and admitted it as a standard of comparison upon that ground. We cannot see from the exceptions that he was not warranted in so doing. If so, the writing was competent for the purpose ; and the ruling and instructions not erroneous in law. *Richardson* v. *Newcomb*, 21 Pick. 315. *Exceptions overruled.*