# PARTRIDGE *v.* UNITED STATES.

CRIMINAL LAW; FALSE PRETENSES; EVIDENCE; PROMISSORY NOTES; INDICTMENT; INSTRUCTIONS TO JURY.

1. In criminal as in civil cases, evidence of other acts and doings of the party, of a kindred character, is admissible, in order to illustrate or establish his intent or motive in the particular act charged. (Citing *Fearson* v. *United States*, 10 App. D. C. 536; *Funk* v. *United States*, 16 App. D. C. 478; *Ryan* v. *United States*, 26 App. D. C. 74, 6 Ann. Cas. 633; *Gassenheimer* v. *United States*, 26 App. D. C. 433; and *Burge* v. *United States*, 26 App. D. C. 524).

2. The exercise of the discretion of the trial court in the admission of evidence of other acts of a party charged with fraud or false pretenses, of a like character, in order to illustrate or establish his intent or motive in the particular act charged, will not be disturbed on appeal, unless it manifestly appears that the testimony had no legitimate bearing on the question at issue, and was calculated to prejudice the party charged in the minds of the jury.

3. In a prosecution for false pretenses, letters written by the accused to a person other than the prosecuting witness, tending to show the falsity of the subsequent alleged false representations to the prosecuting witness, are admissible as tending to show the knowledge and intent of the accused,—especially where such letters constitute an admission that such subsequent representations were not true.

4. Evidence that one who had sold stock by misrepresenting the value of the corporate property prevented an examination into its value, by

concealing records and otherwise, when an inquiry into the affairs of the corporation was begun, is admissible against him in a prosecution for false pretenses.   (Following *Funk* v. *United States,* 16 App. D. C. 478.)

5. The defendant in a prosecution for false pretenses consisting in false representations as to the value of corporate property is not prejudiced by the admission of testimony of witnesses that they were made dummy officers of the corporation, after which they, at the defendant's request, executed a mortgage and resigned.

6. The testimony of a prosecuting witness in a trial for false pretenses cannot be contradicted by the introduction of an alleged conflicting bill in equity previously filed by him with reference to the transactions involving the false pretenses, the proper practice being to call his attention to the allegations of the bill, and thus lay the foundation for his contradiction.

7. A promissory note is a thing of value within the meaning of Code, § 842, of the District of Columbia, defining false pretenses.

8. The defectiveness of one of two counts in a prosecution for false pretenses does not affect the validity of a conviction by a general verdict and judgment, where the other count is good, and the penalty does not exceed that which may be imposed under one count.   (Following *Posey* v. *United States,* 26 App. D. C. 302.)

9 An instruction in a prosecution for false pretenses, that to warrant a conviction the delivery of the money to the defendant must have been induced, "in whole or in part," by one or more of the specific representations alleged, is not, because of the insertion of the quoted words, objectionable as capable of misleading the jury, where such words are supplemented by a general charge that the alleged false pretenses need not have been the sole inducement, and that it is enough if the fraud was accomplished by the alleged representations in conjunction with other inducements and statements, and would not have been consummated but for the representations alleged.

10. To warrant a conviction for false pretenses it is not essential that the prosecuting witness shall have relinquished his property solely on the pretenses alleged, it being sufficient that they had a preponderating influence, though operating in conjunction with other considerations.

11. It is not error for the court to refuse to charge in a prosecution for false pretenses that an allegation of the making of false statements in reference to the ownership of "timber land" is not supported by the introduction of a pamphlet concerning the ownership of "timber," where there is testimony to show that the defendant made oral statements as to the ownership of "timber land."

12. One accused of false pretenses cannot escape conviction upon the ground that his victim was given an opportunity to make an investigation which would have disclosed the fraud, and was told by the former not to rely upon his representations, unless it further appears that the victim accepted the withdrawal of the representations and assumed to act upon his own judgment.

13. A requested instruction in a prosecution for false pretenses, which states that the defendant cannot be convicted if the prosecuting witness was not induced to part with his money by certain representations which are but two of several alleged in the indictment, is bad in not stating merely that he cannot be held criminally responsible for those particular representations; and the court is not bound to reduce the charge to the proper form and give it to the jury.

14. The ownership of 5 acres of land in one state is insufficient to warrant one's acquittal of false pretenses, consisting in a claim of ownership of thousands of acres of timber lands in that state and two others.

15. While a beneficiary in a deed of trust may be regarded as owning the land, a contract for title not yet perfected does not of itself carry ownership so as to prevent a conviction for false pretenses in making representations concerning such ownership.

16. To warrant a conviction for false pretenses it is not necessary that the representations shall have been direct, definite, and positive, it being sufficient that they were artfully and indirectly worded so that they were likely to deceive persons of ordinary intelligence, and did deceive in the particular case.

No. 2457.   Submitted Jan. 6, 1913.   Decided Feb. 3, 1913.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia convicting him of procuring a certain promissory note and money by false pretenses.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

Robert H. Partridge appeals from a conviction and sentence to three years' confinement in the penitentiary, under an indictment for procuring a certain promissory note and money by false pretenses.

The indictment is in two counts. The first charges that he,

on August 19, 1905, obtained from Eugene Hannan a promissory note for $6,500, payable in sixty days to the order of said Partridge as trustee. The second charges that on August 21, 1905, he procured from said Hannan, $9,000 in money.

The false pretenses are charged in each count substantially as follows: 1. That the National Lumber Company, a corporation, owned a certain patented process for recovering certain named products from vegetable matter. 2. That said company owned thousands of acres of valuable timber land in the states of Virginia, West Virginia, and Kentucky. 3. That said company owned buildings and machinery for recovering said vegetable products, of the value of $118,000. 4. That the stock of said corporation was secured by interest-bearing certificates, secured by first mortgages on city property and guaranteed by the Granite Securities Company, a corporation. 5. That said National Lumber Company owned over a million dollars' worth of marketable timber. 6. That said company had only $15,000 of treasury stock for sale at par. 7. That the said company had acquired and owned large interests in a valuable deposit of nickel. The truth of each representation was expressly denied. The representation as to the nickel deposit was eliminated on the trial, the prosecuting witness admitting that he attached no importance thereto.

The United States offered evidence tending to show that on the respective dates alleged in the indictment, the said Eugene Hannan, in payment for $15,000 of the treasury capital stock of the National Lumber Company, delivered the note described, which was later paid, and the $9,000 in money to the defendant; and that the said delivery and payment were induced by belief in the truth of the several representations alleged in the indictment, made to himself by defendant orally and through printed pamphlets, save and except the seventh one, relating to the nickel deposit.

*Mr. Edward L. Gies* for the appellant.

*Mr. Clarence R. Wilson,* United States Attorney and *Mr. Charles H. Turner,* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Numerous exceptions were reserved on the trial, and the errors assigned on these have been grouped by the appellant under three general heads, for discussion. Group 1 relates to the evidence of representations made to others. Group 2 relates to evidence of statements, etc., in connection with an equity suit brought by the prosecuting witness against defendant. Group 3 embodies exceptions taken to special instructions given and refused. These will be considered in their order.

1. William R. Tulloss, who lived at Haymarket, Virginia, was introduced by the government, and testified that he knew defendant in 1903 or 1904, and sold him some timber land for stock in the National Lumber Company,—100 shares at $5 per share. This was objected to as irrelevant. Defendant represented that the stock was guaranteed and as good as gold. The same objection was reserved and overruled. Witness then produced two letters of defendant to him, both dated April 18, 1905. Witness had written to the Granite Securities Company, of Los Angeles, California, and the first letter by defendant followed the same. It reads as follows:

April 18, 1905.

W. R. Tulloss,
Haymarket, Va.
Dear Sir:—

Your letter to the Granite Securities Company of March 27th was referred to me by them. In reply, beg to say our company canceled the underwriting contract with the Granite Securities Company, it being mutual, we finding a way in which we obtained the securities and investment certificates, saving to our company a brokerage, and having purchased such securities, etc., direct, placing them in escrow with trustees in Washington, D. C.—depositing them in the safety vaults of the Washington Loan & Trust Company, giving us a much securer business for all interested parties.

The Granite Company could not furnish, under the law, the
agreement that they thought they could at first, thirty-year
bonds, and we did not want their twenty-year bonds, they be-
ing too expensive, so changed the method and practically did
the same work, obtaining the securities and saving the com-
pany 25 per cent, or thereabouts.

I am,

Robert H. Partridge,

Per Palmer.

The second letter of same date was to the effect that if
Tulloss had written to defendant originally about what he
wished to know, he might have saved time. This evidence was
objected to on the ground that it was irrelevant, because too
remote, and disconnected from the issue. Motion to exclude
was made on the same ground.

The rule that excludes evidence not directly comprehended
in the issue has its well-established exceptions; "or rather per-
haps," in the language of Mr. Justice Story, "it may with more
certainty be said, the exception is necessarily embodied in the
very substance of the rule." *Wood* v. *United States,* 16 Pet.
342–360, 10 L. ed. 987–994.

Where the question is one of guilty knowledge, or fraudulent
intent, as was said in the same case, "it has always been deemed
allowable, as well in criminal as in civil cases, to introduce evi-
dence of other acts and doings of the party, of a kindred char-
acter, in order to illustrate or establish his intent or motive in
the particular act directly in judgment. * * * Cases of
fraud present a still more stringent necessity for the application
of the same principle." A case there cited with approval (*Irv-
ing* v. *Motley,* 7 Bing. 543, 5 Moore & P. 380, 9 L. J. C. P.
161) was an action of trover to recover goods obtained through
fraudulent conduct, and it was held permissible to prove other
instances in which the same party procured goods under simi-
lar circumstances. The question has been discussed by this
court in several cases in attempting to point out the applicability
or inapplicability of the exception to the particular issue in-

volved. See *Fearson* v. *United States,* 10 App. D. C. 536–538; *Funk* v. *United States,* 16 App. D. C. 478–493; *Ryan* v. *United States,* 26 App. D. C. 74–83, 6 Ann. Cas. 633; *Gassenheimer* v. *United States,* 26 App. D. C. 433–443; *Burge* v. *United States,* 26 App. D. C. 524–534. We shall not review the many authorities cited in the briefs of the parties which present applications of the rule and its exceptions to particular circumstances, for the reason that no one involves facts and circumstances so nearly like those in the present case as to furnish a certain guide to its proper determination. The difficulty is neither in the rule of evidence nor in its exceptions, but in applying them to the facts and circumstances of the particular case.

The undue zeal of the prosecutor often leads him to attempt the introduction of evidence of a distinct crime under the contention that it is relevant as tending to prove identity, motive, or intent. In such cases it is the function of the trial court to enforce the just rule of law for the protection of the accused. In determining the often difficult boundary line of the exception to the rule, the trial court, who hears all of the witnesses, and who is familiar with all the circumstances of the case, is necessarily vested with a certain discretion which ought not to be interfered with unless it manifestly appears that the testimony has no legitimate bearing upon the question at issue, and is calculated to prejudice the accused in the minds of the jurors. *Moore* v. *United States,* 150 U. S. 57–60, 37 L. ed. 996, 997, 14 Sup. Ct. Rep. 26.

We are not prepared to say that the court exceeded its discretion in this case. The mere fact that the defendant may have made a similar misrepresentation of the stock guaranty to another, if it stood alone, may have been so separate and independent as not to be relevant to the direct issue involved. But it does not stand alone; it was an appropriate introduction to the letter of defendant, which was an admission that his representation to Hannan, some months later, of the guaranty of the stock of the National Lumber Company, was untrue. This admission of the fact, though made to another purchaser of the stock, and before the sale to Hannan, was pertinent evidence

to show his knowledge and intent at the time he made his representations to the latter as one of the inducements to his purchase.

2. Several exceptions were taken to the evidence of J. S. Easby-Smith and others, who were introduced on behalf of the prosecution. (1) The first witness, who is a member of the bar, testified substantially that he had been retained by Eugene Hannan to investigate the affairs of the National Lumber Company, and called upon defendant, who refused to give him any information. That defendant said: "He (Hannan) will not dare to do anything public in this matter. He took the money from his church to invest in this affair, and he don't dare let anything become public. I am not afraid of you. I will not give you any information now; that is the end of it." That in May, 1908, Hannan filed a bill to have a receiver appointed for the National Lumber Company, and obtained a rule to show cause, to which there was no response.

Defendant, who had not objected to this evidence when introduced, then moved to exclude it as incompetent and irrelevant. This was overruled with exception reserved.

Witness further testified that he visited defendant in company with the receiver Quinn when a rule had been served on defendant to produce the records of said corporation, which he denied having. That, on being brought before the equity court and informed that he would be held in contempt if he did not produce the records within ten days, he produced the same within the time, saying that he had obtained them from one Kinchelow, in Virginia. Certain questions that had been propounded to defendant in the equity court were then offered, and it appears from the bill of exceptions that the answers to two of them were admitted; but the answers are not recited. Exceptions on the same ground were noted.

(2) The receiver Quinn was then introduced and testified to his failure to get the records for defendant. That later he visited Broad Run to look at the property of the corporation there. Defendant was there, and refused him admission to the premises, and threatened violence. All that he saw was some old

"junk stuff" worth in Washington about 35 cents per hundred. This was excepted to as immaterial.

In considering the relevancy of this evidence it is to be remembered that one of the false representations charged was that the National Lumber Company owned buildings and machinery, for recovering the products, such as tar, turpentine, alcohol, creosote, and other articles from vegetable matter, of the value of $118,000; and another, that said company had a patent for the process of recovery. This patent, the nonexistence of which was then unknown to the witnesses, and, if existent, should properly have been among the records and papers of the company which defendant was asked to produce. The value of the building and machinery was one of the facts in issue. The conduct of the defendant, in secreting the records and preventing the examination of the value of the property, was an attempt to prevent the obtaining of knowledge pertinent to the charges against him, and shows circumstances proper for the consideration of the jury in accord with established principles. See *Funk* v. *United States,* 16 App. D. C. 478–493, and cases there cited.

(3) Two other witnesses were introduced, who testified that they were notified by defendant in 1907 that they had been chosen as president and secretary, respectively, of the National Lumber Company; that they executed a mortgage at defendant's request, and then at his request resigned. This evidence was objected to, but the ground of the objection was not stated. It had some tendency to show that defendant was the controller and manager of the corporation, and as such familiar with its properties and claims; and with its records and papers. We need not discuss it further; for if of little or no weight in the bearing suggested, we cannot perceive how any harm could result to defendant.

(4) The defendant offered to introduce the bill of Eugene Hannan in the equity case in order to show that the complaints of said Hannan therein were in conflict with his statements as a witness. The bill is not incorporated in the record, so that we have no knowledge what the nature of its allegations are, and

cannot pass upon their relevancy. If the bill did contain allegations of fact different from facts testified to by the witness, the proper practice would be to call the attention of the witness to them and thus lay a foundation for his contradiction.

3. The first special instruction of defendant refused is that the jury should return a verdict of not guilty, because the first count of the indictment does not charge an offense. The contention is that a promissory note is not a thing of value within the meaning of the Code, Sec. 842 [31 Stat. at L. 1326, chap. 854], defining "false pretenses." We perceive no foundation for the construction of the section as contended for. Defendant was not charged with obtaining the signature of a maker, indorser, or guarantor of a note for a purpose by false pretenses, but with procuring the delivery of the note itself to him as a representative of value. It was a thing of value within the meaning of the first clause of the section, and was paid at maturity. But if the first count was defective, no error was committed for which the judgment could be reversed; for the remaining count was unquestionably good. *Claassen* v. *United States,* 142 U. S. 140, 35 L. ed. 966, 12 Sup. Ct. Rep. 169; *Posey* v. *United States,* 26 App. D. C. 302–305. The verdict and judgment were general, and the penalty was no greater than could be imposed under one count.

4. The defendant prayed a lengthy instruction to the effect that the specific charges of the indictment were to be observed, and a verdict of guilty could not be found unless the jury were satisfied beyond a reasonable doubt on the following points: 1. That the defendant induced Eugene Hannan to part with the money and note described by means of one or more of the specific representations set out in the indictment. The three other points need not be stated, because they were all given, after the court had amended the paragraph above recited by inserting the words, "in whole or in part," between the words "described," and "by means." To this amendment the exception is directed. In the general charge the court supplemented the amended instruction, after charging that the false pretenses must be proved beyond a reasonable doubt, etc., with these

words: "It is not meant by this that the alleged false pretense or pretenses should have been the sole inducement which moved him to part with his promissory note and money. It is enough if, in co-operation with other inducements and representations if any, disclosed by the evidence, the alleged fraud would not have been accomplished, if you believe it was accomplished, but for one or more of the alleged false pretenses set out in the indictment."

There was no error in the amendment of defendant's instruction, and with the addition above quoted, its meaning could not possibly have been misunderstood by the jury. Wharton (Crim. Law, sec. 1176) states the rule of law as follows: "But it is not necessary to a conviction that the false pretenses alleged should have been the sole inducement by which the property in question is parted with, if it had a preponderating influence sufficient to turn the scale, although other considerations operated upon the mind of the party. And this is true even though the prosecutor would not have surrendered the goods solely on the pretense alleged. To require that the belief should be the exclusive motive would exclude conviction in any case; for in no case is any motive exclusive."

This proposition is maintained by the overwhelming weight of decided cases, some of which are here cited. *Com. v. Coe,* 115 Mass. 481–494; *Morgan v. Skiddy,* 62 N. Y. 319–328, 7 Mor. Min. Rep. 74; *Therasson v. People,* 82 N. Y. 238, 239; *Donohoe v. State,* 59 Ark. 375, 27 S. W. 226; *Morris v. State,* 54 Fla. 80–85, 45 So. 456, 14 Ann. Cas. 285.

The fourth special instruction, to the refusal of which exception was taken, is to the effect that if the representations made to Eugene Hannan in the printed pamphlet or folder were that the Lumber Company owned thousands of acres of timber, this would not sustain the charge that defendant represented the ownership of "timber land." Without pausing to analyze the artful statements of the pamphlet, and determine whether they were not calculated to be understood as referring to the ownership of the timber land, and not uncut timber merely, it is sufficient to say that if the statements in the pamphlet were

unambiguous it was not error to refuse the charge. The representations of the pamphlet were not the sole reliance of the prosecution. The indictment charged the representation of the ownership of timber land, and the witness Hannan testified that this was the representation made by defendant to him orally.

6. The seventh special instruction asked by the defendant and refused by the court reads as follows: "Before the defendant can be convicted you must believe from the evidence beyond a reasonable doubt that the representations made to the said Eugene Hannan by the defendant were the inducing cause of his parting with his money and with the note in question, and if you shall find that the said Eugene Hannan did not rely upon the representations so made to him, but that before paying the money and delivering the note he visited the premises at Broad Run, Virginia, and there inspected the property of the company, both real and personal, and was informed by the defendant that he should satisfy himself by observation and by inquiry, and not rely upon the printed folders or the representations heretofore made; and further find from the evidence that the said Eugene Hannan, upon such occasion, was provided with the minute book of the National Lumber Company, and requested to read the same so that he might inform himself fully in the premises, and that he then and there read, or was given by the defendant full opportunity to read, the minute entry of October 11, 1904, which has been read in evidence, then you are instructed that your verdict should be for the defendant."

The foregoing instruction was based upon evidence offered by the defendant, tending to show, in contradiction of Hannan, that the latter had visited Broad Run, Virginia, prior to paying over his money and note, and had been given an opportunity to inspect the property there and the minute book of the corporation, which would show that the guaranty of the bonds had been changed from the Granite Securities Company, a corporation, to the Realty Syndicate of San Francisco; and that he had been told by defendant not to rely upon the printed folders or the representations made to him, but to satisfy himself by

observation and inquiry. The refusal of the instruction was not error. It falls short, it will be observed, in presenting the issue whether Hannan actually accepted the withdrawal of the representations by defendant upon which their previous negotiations had been conducted, and assumed to act entirely upon his own judgment. The mere statement of defendant that he should do so, and the opportunity to make examination to the extent afforded, would not authorize a verdict of not guilty, without the ascertainment of the further fact. Moreover, the evidence pointed out but two grounds of misrepresentation into which opportunity for inquiry and examination were offered; namely, the mill machinery and buildings at Broad Run, and the recital of the minute book relating to the Granite Securities Company and the Realty Syndicate. As conceded by the defendant in one of the instructions asked and given, a conviction could be had if one only of the misrepresentations had been proved, provided Hannan was induced by it to part with his money. It is not pretended that an opportunity was given Hannan to examine or inspect the thousands of acres of timber or timber lands in Virginia, West Virginia, and Kentucky, represented as owned by the corporations whose stock he was induced to purchase; or that he was shown any titles, or sources of titles thereto. Moreover, no reference whatever was made to the patent which it was represented the company had for reducing vegetable matter and extracting the valuable products thereof, and upon which reliance was had for the great future profits of the concern. This patent, as the evidence conclusively shows, had never been issued, and could not, therefore, have been exhibited. The court was not bound to segregate the two independent features of misrepresentation from the others, and permit the jury, upon their failure, to find a verdict of not guilty as to all. The instruction should have been limited, at least, to the two grounds of misrepresentation; and the court was not bound to reduce it to proper form, and then give it to the jury.

7. It was not error to refuse the eighth instruction asked by the defendant. The alleged false representation charged and

proved was that the Lumber Company owned thousands of acres of timber lands in Virginia, West Virginia, and Kentucky. There was evidence tending to show that the company in fact owned 5 acres of land at Broad Run, Virginia. The effect of the instruction was that if the company owned 5 acres of land in Virginia, defendant should be acquitted of the falsity of that representation. The allegation of the indictment denying the truth of the representation applied properly to the same as charged. What has been said here applies also to instruction No. 9 and to No. 10, which were refused.

8. The fourteenth special instruction was rightly refused. It is subject to the same objection that has been pointed out in the discussion of special instruction No. 7, hereinabove. It singles out one of the misrepresentations of fact, and instructs the jury, in the event of finding that to be true, to return a verdict of not guilty in general.

While correct, too, in the statement that lands held by defendant under deeds as trustee for the Lumber Company, would constitute it the owner of the same, it went too far in saying that contracts or agreements for title not yet perfected would, without something more, answer a representation of ownership.

9. The last assignment of error is on an exception taken to the granting of the following instruction requested on behalf of the prosecution: "The jury are instructed that it is not necessary, to constitute the crime of obtaining money by false pretenses, that the false representations, wilfully made by the defendant, and in fact relied upon by his victim, should be direct, definite, and positive statements of fact; it is enough if the said false statements and representations are artfully and indirectly drawn, so that they are sufficient to deceive a person of ordinary intelligence, and in fact did deceive in the case at bar."

The representations charged in the indictment as falsely made were supported by the recitals of printed pamphlets and folders, and by evidence that they were orally made. The foregoing instruction was directed to the printed matter, which inspection shows to have been ambiguously, and apparently,

artfully worded. All that is requisite is that the representations shall have been so worded as reasonably to deceive a person of ordinary intelligence; and that they did in fact deceive the party to whom they were addressed, and exercised a preponderating influence, inducing him to deliver his money. *People v. Haynes,* 11 Wend. 557, 558; *Colbert* v. *State,* 1 Tex. App. 314–320; *Buckalew* v. *State,* 11 Tex. App. 352–354.

We have discovered no reversible error in the record, and the judgment is affirmed.                              *Affirmed.*