# ROBINSON *v.* UNITED STATES.

FALSE PRETENSES; EVIDENCE; INTENT; QUESTION FOR JURY; INSTRUCTIONS.

1. Facts warranting a verdict finding an accused guilty of false pretenses are sufficiently shown by testimony of the prosecuting witness that the accused, in selling stock of a corporation having the exclusive right by contract to exploit a patented device, falsely represented that he owned the patent and that a certain person was attorney for the corporation, the witness further testifying that in buying stock he was particularly influenced by the latter representation.

2. Facts warranting a verdict finding an accused guilty of false pretenses are sufficiently shown by testimony of the prosecuting witness that, in selling stock of a corporation having the exclusive right by contract to exploit a patented device, falsely stated in response to questions by the witness, that "we own the patent" and that he had looked into the patent thoroughly so as to make sure that he could not be beaten out of it, and also falsely stated that certain named business men of prominence, one of whom the witness knew, were associated with the company; the witness further testifying that one thing which influenced him to purchase stock was the ownership of the patent back of it.

3. Evidence that one accused of false pretenses knowingly and with intent to defraud made material misrepresentations, but for which the prosecuting witness would not have parted with his or her money is suffi-

cient to sustain a conviction. (Citing *Partridge* v. *United States*, 39 App. D. C. 571.)

4. The elements of the offense of false pretenses are a false pretense or false representation by the defendant or someone acting for and instigated by him, knowledge by the defendant as to its falsity, reliance on the pretense or representation by the person defrauded, intent to defraud, and an actual defrauding.

5. It is for the jury in a trial of an indictment for false pretenses to determine whether each of the elements of the offense has been established by the evidence, and the court is not authorized to invade the province of the jury by telling them that if certain facts are proved the intent to defraud is made out.

6. The intent to defraud, essential to a conviction for false pretenses, may be imputed to the accused by the jury from evidence that he obtained something of value from another by false representations knowingly made with intent to induce the action taken by the other, even though it appears that the accused believed that the other was receiving substantial value.

7. Everyone is presumed to intend the natural and probable consequences of his acts, and when misrepresentations are intentionally made to obtain something of value from another, and those representations are acted upon by the other, it is for the jury to say whether the intent to defraud has been established; in other words, such evidence warrants the jury in inferring the existence of the intent.

8. A charge in a trial for false pretenses is not objectionable as withdrawing from the jury the question of intent to defraud, where the jury was instructed, both in the general charge and in a special charge given at the defendant's request, that an intent to defraud was essential to a conviction, although in reiterating the elements of the offense, in another part of the charge, the court apparently through inadvertence failed to mention intent to defraud, and added that if the false representation was knowingly made with the intent that it should be relied upon and was relied upon, that would make out a case, because that was an intent to defraud in law, no matter whether the defendants thought that the other party would ultimately get value received or not.

No. 2617.   Submitted March 6, 1914.   Decided April 6, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia convicting him of obtaining money by false pretenses with intent to defraud.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

The defendant, George P. Robinson, appellant here, was convicted in the supreme court of the District of the offense of obtaining money by false pretenses, "with intent to defraud" (Code, sec. 842 [31 Stat. at L. 1326, chap. 854]), as charged in three of the four counts of the indictment.

There was evidence before the jury tending to prove the following facts:    George A. Marsh invented the Helicoid copyliner, a device for holding copy for typewriter operators, for which invention a patent was issued to his assignee, the Helicoid Copyliner Company, a corporation organized in the fall of 1910, the defendant being among the incorporators.    Thereupon the defendant entered into a contract with the Helicoid company by which he was given the exclusive right to exploit the device within the United States for a period of ten years, with the privilege of extending the contract for a like period.  Under this contract it was necessary that the defendant purchase from the Helicoid company a stated number of machines within stated periods.    The defendant and a Mr. Frederick C. Handy then organized and incorporated the National Distributing Company, with a capital stock of $100,000, to be divided into 100,000 shares of the par value of $1 per share.    To this new company the defendant assigned his contract with the Helicoid company.    Steps were then taken by the distributing company to establish agencies in various parts of the United States, but, by reason of a defect which subsequently developed in the device, the enterprise was not a success.

Mary Moore, a clerk in the Treasury Department and the complaining witness in the first count of the indictment, to whom the defendant sold 750 shares of the stock of the distributing company, testified, among other things, that the defendant told her he owned the patent on the copyliner and that Wilton J. Lambert was the attorney of the distributing company. Neither of those statements was true, and the witness stated that she was *particularly* influenced in the purchase of this stock by the statement that Mr. Lambert was the attorney for the company.

The complaining witness under the third count of the indictment, Clarence Baker, also a clerk in the Treasury Department and to whom the defendant sold stock of the distributing company, testified that upon one of the occasions when the defendant called to see him he asked the defendant about the ownership of the patent, to which the defendant replied: "We own the patent." Witness then inquired whether the defendant had looked into the patent thoroughly, "so as to make sure he could not be beaten out of it." The defendant informed the witness that it had been inquired into thoroughly, and further stated that there were a number of prominent business men, whom he mentioned and one of whom witness knew, who were associated with the company. These statements were not true, and witness testified that one thing which induced him to purchase the stock was "the ownership of the patent back of it."

The complaining witness under the fourth count of the indictment, Robert H. Hartshorn, another clerk in the Treasury Department, who purchased stock from the defendant, testified that the defendant represented to him that the distributing company owned the copyliner patent. "The defendant represented that the company in which he was endeavoring to get the witness to purchase stock had the rights to the machine, the patent rights, and that is what the witness understood he was getting." Further, that the company was doing a flourishing business, was well established, and would shortly pay dividends. Witness "was induced to purchase the stock because of the ownership of the patent, which had been demonstrated to be a good patent, able to do good work, already established in business to be a success."

Since the defendant was acquitted under the second count, it need not be noticed here.

*Mr. John E. Laskey* and *Mr. Conrad H. Syme,* for the appellant:

1. In the construction of statutes against obtaining property by false pretenses an intention to defraud must exist. *People*

*v. Wakely,* 62 Mich. 297; *Woodruff* v. *State,* 61 Ark. 157; *Stokes* v. *People,* 53 N. Y. 164; *People* v. *Baker,* 96 N. Y. 340; *Pittman* v. *State,* 58 So. 532; *Brown* v. *People,* 16 Hun, 535, 537; *State* v. *Morton,* 76 Mo. 180–182; *Rex* v. *Williams,* 7 Car. & P. 354.

*Mr. Clarence R. Wilson* and *Mr. S. McC. Hawken,* for the appellee:

1. An honest intent does not negative the intent to defraud, and constitutes no defense to a charge of obtaining money under false pretenses. *Reg.* v. *Naylor,* L. R. 1 C. C. 3; 10 Cox, C. C. 149; *Buntain* v. *State,* 15 Tex. App. 515, 520; *Carlisle* v. *State,* 77 Ala. 71; *People* v. *Wieger,* 100 Cal. 352; *Com.* v. *Coe,* 115 Mass. 481; *State* v. *Thatcher,* 35 N. J. L. 445; *Com.* v. *Schwartz,* 92 Ky. 510; *People* v. *Oscar,* 105 Mich. 704.

Mr. Justice ROBB delivered the opinion of the Court:

At the close of the evidence the defendant requested an instructed verdict of not guilty as to each count, but here concedes that there was evidence sufficient to go to the jury under the fourth count. While the evidence under the first and third counts is not quite as clear as that under the fourth count, it nevertheless is sufficiently so to sustain the verdict as to those counts, and hence there was no error in submitting them to the jury. Under each of those counts the jury was justified in finding from the evidence that the defendant, knowingly and with intent to defraud, made material misrepresentation, but for which the complaining witness would not have parted with his or her money. That was enough. *Partridge* v. *United States,* 39 App. D. C. 571.

At the request of the defendant the court charged the jury that they must find that the statements set out in each count, or some of them, were in fact made by the defendant, that they were false, were known by the defendant to be false, "and were made by him designedly *and with an intent to defraud the*

person named in such count as the one to whom such pretense or pretenses were made." The defendant further requested the court to charge that it was for the government to establish beyond a reasonable doubt that the defendant intended to defraud the person named in each count, and, further, that if the jury should be "satisfied from the evidence that the defendant had faith in and honestly believed the stock of the National Distributing Company to be valuable and worth 50 cents per share, and that such faith and such belief on his part were reasonable under the circumstances disclosed by the evidence, and that he sold said stock to the purchaser thereof in that belief," the verdict should be not guilty, without regard to the finding "as to the truth or falsity of the pretenses by which such purchase was induced." This request was refused and exception noted.

Thereupon the court proceeded to charge the jury in part as follows: "Now suppose we take the ownership of the patent, which is common to all of these counts. There is an allegation in each one of these counts that Mr. Robinson procured this money, or the notes, property, whatever its form may have been, from a party to whom the sale of stock was made, by means of a statement that the corporation owned this patent; that that statement was false in fact; that he knew it was false when he made it, and he made it with the intent and purpose to have it relied upon by the person to whom he made the statement; that is, with intent to defraud the person, with intent to have the person part with his or her property in reliance upon that false statement." Later on in the charge the court said: "And if all those facts that I have just been referring to are proved to your entire satisfaction, then he is guilty as to that misrepresentation. That is to say, to go over it again, if he represented that the corporation in which he was selling stock, the distributing company, was the owner of that patent, intended to have that understood and acted upon by the other party, and it was so understood and acted upon by the other party, was relied upon by the other party, who parted with his or her property, that would make out a case; because that would be what the

law intends by intent to defraud, no matter if the defendant thought it was a good thing and that the parties would be get-ting value received in the end, because the parties had a right to judge of that matter, and not have him judge, by something back in his own mind, that the proposition was a good one for some other reason."

At the close of the entire charge of the court the defendant excepted to so much thereof "as refers to the matter of the representation as to the patent, in telling the jury that if they find it was knowingly made, and was false, and relied upon that, they should find the defendant guilty, no matter whether he thought this was a good thing and that the parties would get value received in the end."

Our false pretenses statute, like most American statutes on the subject, is modeled after the statute of 52 Geo. III. chap. 64, ¶ 1. The elements of the offense are a false pretense or false representation by the defendant or someone acting for and instigated by him, knowledge by the defendant as to the falsity, reliance on the pretense or representation by the person de-frauded, intent to defraud and an actual defrauding. It is for the jury to determine whether each of those elements has been established by the evidence, and the court is not authorized to invade the province of the jury by telling them that if certain facts are proved the intent to defraud is made out. *Woodruff* v. *State,* 61 Ark. 157, 32 S. W. 102; *Sharp* v. *State,* 53 N. J. L. 511, 21 Atl. 1026; *Brown* v. *People,* 16 Hun, 535; *People* v. *Baker,* 96 N. Y. 340; *Pittman* v. *State,* 101 Miss. 553, 58 So. 532. But this does not mean that one may prevent a jury from imputing to him an intent to defraud, where the evidence shows that he has obtained something of value from another by means of false representations, knowingly made with intent to induce the action taken by the other, by introducing evidence tending to show that he believed the other was receiving something of substantial value. Such a rule would practically destroy the statute. Everyone is presumed to intend the natural and prob-able consequences of his acts, and, when misrepresentations are intentionally made to obtain something of value from another

and those representations are acted upon by the other, it is for the jury to say whether the intent to defraud has been established. In other words, such evidence warrants the jury in inferring the existence of the intent. Thus, in *Reg.* v. *Naylor,* L. R. 1 C. C. 4, 10 Cox, C. C. 149, 35 L. J. Mag. Cas. N. S. 61, 11 Jur. N. S. 910, 13 L. T. N. S. 381, 14 Week. Rep. 58, the defendant had procured goods of the prosecuting witness through false representations. The jury found that the defendant had procured the goods of the prosecuting witness through false representations, but further found that at the time those representations were made the defendant intended to pay the price of them when it should be in his power to do so. The judgment of conviction was sustained. In *Com.* v. *Coe,* 115 Mass. 481, a false pretense case, the court said: "The offense consists in obtaining property from another by false pretenses. The intent to defraud is the intent, by the use of such false means, to induce another to part with his possession and confide it to the defendant, when he would not otherwise have done so." To the same effect are *Buntain* v. *State,* 15 Tex. App. 515; *People* v. *Wieger,* 100 Cal. 352, 34 Pac. 826; *People* v. *Oscar,* 105 Mich. 704, 63 N. W. 971. It is apparent from the foregoing that the court properly refused to adopt the defendant's theory upon this branch of the case.

We come now to the assignment of error based upon the exception to the court's charge. The court, as previously noted, had already not only granted a prayer of the defendant in which the jury were instructed that they must find an actual intent to defraud, but, in the general charge, had carefully instructed the jury to that effect. In the part of the charge to which exception was taken, the court, after setting out all other elements of the offense, apparently through inadvertence failed again to mention the element of intent to defraud. The objection having been general and a paraphrase of the prayer of the defendant which the court had refused, naturally it would have been inferred that the basis of the objection was the inconsistency between the rejected prayer and the charge as given. That the court so understood it is apparent from the fact that there really

was no difference of opinion between the court and the defendant upon the question whether an actual intent to defraud should be found by the jury. A specific instruction to that effect had been given, and, had the defendant detected any conflict with that instruction in the language subsequently employed by the court, the court's attention should have been directed to it. We are of the opinion that the charge, taken as a whole, did not withdraw from the jury the determination of the question of intent to defraud.

The judgment must be affirmed. *Affirmed.*