[Crim. No. 3684. Second Dist., Div. Three. June 8, 1943.]

THE PEOPLE, Respondent, v. CHARLES A. PILLSBURY, Appellant.

108

James O. Warner for Appellant.

Robert W. Kenny, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

SHAW, J. pro tem.—After a trial by the court sitting without a jury, the defendant was found guilty of grand theft of an automobile. He now appeals from the judgment, presenting as his sole point on appeal the contention that the evidence is insufficient to support the trial court's finding of guilt. This contention must be sustained.

The automobile in question was owned by Carl R. Menikheim, hereinafter referred to, following the witnesses, as "Carl." He was called into military service in April, 1942, and left the automobile in charge of his fiancee, Miss Dorothy Jerome. She did not use it, but had the keys and kept it stored in a garage.

About two weeks after Carl went into the army, the defendant came to the store where Miss Jerome worked and told her he could sell the car if Carl was interested in selling it. He said he worked for the Edison Company and his boss, Roy L. Newell, was interested in buying the car. She wrote to Carl, and when defendant later called her by telephone told him Carl would sell the car for $1,000 cash. Defendant then came to the store and brought Miss Jerome forms of power of attorney and authorization for payment, apparently for Carl to sign. These papers were introduced in evidence but have not been brought up as a part of the record, so we do not know their contents. However, we assume from what is said of them in the record that they constituted some sort of authorization for Miss Jerome to act for Carl in transferring the automobile. Carl signed these papers and sent them back to Miss Jerome, and thereupon, about the last part of May or the first of June, 1942, Miss Jerome gave defendant the keys to the car and he took possession of it. He told Miss Jerome at the time that he would deliver the car to Mr. Newell and bring the money to her, "next week." She believed defendant's story and was induced thereby to turn the car over to him.

Next week defendant called Miss Jerome and told her he

was delayed and would bring her the money the last of the week. A little later he told her he would have to make some repairs to the car before his boss would accept it and when she demurred to this, defendant said his boss would pay $1,100 for the car. He told her he did not want to bring the car back, as she requested, because he wanted to work on these repairs in his spare time. She then gave him permission to keep the car for this purpose. On June 21st Carl came down to Los Angeles from the military camp, and defendant brought the car to Miss Jerome, he and she and her sister met Carl at the bus station, and then Carl and Miss Jerome, after letting the other two out, drove the car to her home. During this trip defendant told Carl about the deal for $1,100 cash, said he had to make a few repairs, and Carl said to him "For $1100, you go ahead and sell it." Later on the same day Carl returned to camp and defendant took the car again. At the time he said he would bring the money the following week.

Several times more the defendant put Miss Jerome off, promising to have the money soon. On July 13, 1942, after Miss Jerome had asked him for the car, he showed her a check for $500, purporting to be signed by Roy L. Newell, which he said was a deposit on account of the car, but he declined to let her have the check. On July 22, he brought the car and showed it to her, calling attention to a chrome strip he had put on it and some polishing he had done. Several more conversations between defendant and Miss Jerome consisted of demands for the money by her and excuses for its nonproduction, with promises to produce it soon, by him. On August 3 he told her he had delivered the car to Newell and had all the money and was waiting for Newell's wife to sign a release, and would then bring the money out. He did not do so. On August 5 she told him she had to have the money or the car, or she would go to the authorities. She got neither, so she made complaint and defendant was arrested. He told the arresting officer where the car was parked, on a street, the officer found it there, and returned it to Miss Jerome.

It appears that while defendant had the car he did replace a chromium strip and make a few other minor repairs to the car. It also appears that he was, or had been, engaged in making occasional sales of used cars, though not licensed as a dealer. Defendant's counsel stipulated, and defendant also testified at the trial, that defendant did not work for the Edison Company, that there was no such person as Roy L.

Newell, and that the purported check which defendant showed Miss Jerome was written by defendant himself. The defendant never had possession of the papers signed by Carl and nothing was ever done by way of transferring title in the car to him.

The charge against defendant, theft, includes the offenses formerly known as larceny, obtaining property by false pretenses and embezzlement. ■ Defendant contends and the People admit, that a case of false pretenses does not appear here because defendant obtained no title to the car. This contention is well taken. ■ Both parties also agree that the case is not one of embezzlement because the original taking was of the same character as the subsequent detention, defendant contending that both were innocent and the People viewing both as fraudulent and wrongful. Either state of the case would exclude embezzlement from consideration. ■ The question remaining for consideration, as both parties agree, is whether a finding that defendant committed larceny by fraud, trick or device, is supported by the evidence. No doubt the fraud, trick or device clearly appears here. By his own admissions, defendant is shown to have been an unmitigated liar, telling a story with no foundation whatever in fact, for the purpose of getting possession of the automobile, and Miss Jerome believed the story and was induced thereby to surrender possession of the car to him, not intending then to part with title. The same can be said of Carl Manikheim, the real owner of the car. Two of the other essential elements of this crime, as they are stated in *People* v. *Edwards,* (1925) 72 Cal.App. 102, 112-116 [236 P. 944], clearly appear, that is, that the car was the property of another, and that it was taken into the sole possession of the defendant.

■ But another essential ingredient of the offense is an intent, without claim of right or justification, to deprive the owner of his property wholly and permanently. (15 Cal.Jur. 906; *People* v. *Coon,* (1940) 38 Cal.App.2d 512, 516 [101 P.2d 565] ; *People* v. *Edwards, supra,* at p. 116; *People* v. *Payne,* (1931) 117 Cal.App. 108, 111 [3 P.2d 328].) ■ And where, as here, no actual trespass or act of violence is involved in the original taking, the felonious intent must exist at the time of the taking. (15 Cal.Jur. 908; *People* v. *Edwards, supra; People* v. *White,* (1924) 66 Cal.App. 703, 706 [226 P. 962].) ■ Looking at the evidence in this case, we are unable to see

any such intent. The defendant's avowed purpose in taking possession of the automobile was to make a sale of it and this he was authorized to do by the owner. He lied about his prospect for a sale, and continued to lie whenever he was asked to produce the proceeds of a sale or surrender possession of the car. But he drove other cars while in possession of the car in question, and there is no evidence that he used that car for any purpose of his own, or did anything with it inconsistent with his avowed purpose of finding a buyer for it. He did make some of the repairs which he said were necessary to facilitate a sale. He surrendered the car to the owner when the latter needed it for his own use, and the owner at that time agreed that defendant might sell the car. Defendant later showed the car to the owner's agent. It does not appear that he ever concealed its whereabouts from owner or agent, or denied the rights of either to the car. He did not have the owner's registration slip or attempt to gain possession of it. It did not appear that he ever found a buyer or was able to make a sale. His web of deceit was woven, as it seems to us, merely to enable him to obtain and keep possession of the car temporarily, in the hope that he might be able to sell it and thereby earn a commission. As the court said in *People* v. *Coon, supra.* ''The course of conduct pursued by appellant . . . is not compatible with the ordinary surreptitious activities of a thief.'' Upon the undisputed evidence it would appear that the circumstances established at most a civil wrong considerably aggravated by defendant's repeated falsehoods.

██ Respondent contends that the question of defendant's intent is solely one of fact for the trial court or jury, citing 15 Cal.Jur. 907, and other authorities to that effect. This is no doubt true where the evidence, with the possible implications therefrom, will, even though conflicting, reasonably admit of an inference of felonious intent. But the rule is the same here as on any other question of fact; where the evidence furnishes no rational support for an inference, on appeal the question becomes one of law for the appellate court, which may, in such case, declare the inference unsupported. (8 Cal.Jur. 593.)

The judgment is reversed and the cause is remanded for a new trial.

Shinn, Acting P. J., and Wood (Parker), J., concurred.