Charles **NELSON**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 12616.**

United States Court of Appeals District of Columbia Circuit.

Argued June 27, 1955.

Decided July 28, 1955.

Petition for Rehearing Denied Oct. 4, 1955.

22

Messrs. James J. Laughlin and Albert J. Ahern, Jr., Washington, D. C., for appellant.

Mr. Gerard J. O'Brien, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., were on the brief, for appellee.

Mr. Samuel J. L'Hommedieu, Jr., Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

This is an appeal from a conviction for obtaining goods by false pretenses in violation of D.C.Code § 22–1301 (1951).[1] The trial court entered judgment of acquittal on a second count charging grand larceny. Evidence was offered to show that appellant from time to time over a period of months, for purposes of resale, had purchased merchandise from Potomac Distributors of Washington, D. C., Inc. (hereinafter referred to as Potomac Distributors). By September 18, 1952, his account was said to be in arrears more than thirty days. Late that afternoon, appellant sought immediate possession of two television sets and a washing machine, displayed his customers' purchase contracts to support his statement that he had already sold such merchandise and had taken payment therefor, and told one Schneider, secretary-treasurer of Potomac Distributors, "I

[1]. In pertinent part the section provides: "Whoever, by any false pretense, with intent to defraud, obtains from any person anything of value, or procures the execution and delivery of any instrument of writing or conveyance of real or personal property . . . shall, if the value of the property . . . so obtained . . . is $50 or upward, be imprisoned not less than one year nor more than three years . . .."

promised delivery tonight." Appellant was told no further credit could be extended to him because of his overdue indebtedness in excess of $1800., whereupon appellant offered to give security for the desired items as well as for the delinquent account. He represented himself as the owner of a Packard car for which he had paid $4,260.50, but failed to disclose an outstanding prior indebtedness on the car of $3,028.08 secured by a chattel mortgage in favor of City Bank. Instead, he represented that he owed only one payment of some $55. not then due. Relying upon such representations, Potomac Distributors delivered to appellant two television sets each worth $136.[2] taking in return a demand note for the entire indebtedness, past and present, in the total, $2,047.37, secured by a chattel mortgage on the Packard and the television sets. Appellant promised to make a cash payment on the note within a few days for default of which the holder was entitled to demand full payment. When the promised payment was not forthcoming, Schneider, by telephone calls and a personal visit to appellant's home, sought to locate appellant but learned be had left town.[3] The Packard about that time was in a collision, incurring damage of about $1000., and was thereupon repossessed in behalf of the bank which held the prior lien for appellant's car purchase indebtedness.

The foregoing summary of the evidence is sufficient for present purposes. Appellant has not denied the falsity of his representations nor that he received the goods he sought from Potomac Distributors. We have not had the benefit of appellant's explanation, if any, as to why he did not intend Potomac Distributors to rely upon his misrepresentations. His counsel, however, argues (a) that there had been no misrepresentation of a material fact and no evidence that Poto-

mac Distributors was defrauded; (b) that oral testimony was received which "varied the terms of the written instruments consisting of a note and a chattel mortgage"; and (c) that the trial judge should have charged, to paraphrase his brief, that appellant could not be convicted unless the jury found he had misrepresented a material fact and unless the jury further found that Potomac Distributors had relied on appellant's misrepresentations.[4]

The trial judge in his charge correctly imposed upon the government the burden of proof as to each element necessary to constitute the crime. He broke down the general language of the indictment and with reference to each item, to be proved beyond a reasonable doubt, he particularized in detail:

"First, that the defendant represented to Joseph H. Schneider, an officer of the Potomac Distributors of Washington, D. C. a body corporate, that his Packard automobile was clear except for the final payment of about $55;

"Second, that at the time such representation was made, it was false;

"Third, that the defendant knew such representation was false at the time he made it;

"Fourth, that Joseph H. Schneider relied on such representation, and in so relying upon it, delivered to the defendant two television sets;

"Fifth, that in making such false representations, the defendant intended to defraud Joseph H. Schneider and the Potomac Distributors of Washington, D. C., Inc., a body corporate;

"Sixth, that, relying on such false representation and delivering to the defendant the two television sets,

---

2. and a washing machine valued at $77.-50 which, for some reason not shown, was not otherwise included in the transaction, although delivered to appellant.

3. The government's brief tells us appellant waived extradition from Grand Rapids, Michigan, on March 10, 1954.

4. Denying requests on these points after the charge, the trial judge said " . . . I rather think, in substance I have covered them, so the renewed motions are denied . . .."

Schneider and the corporation were duly defrauded;

"Seventh, that the transaction, in all its parts, including the making of the false representation by the defendant and the delivery of the two television sets by Schneider to the defendant was had in the District of Columbia on or about September 18, 1952."

Before instructing the jury, in a bench conference the trial judge said ". . . I expect to state in rather definite form what the Government must prove . . .," and he outlined the foregoing instructions, almost verbatim. Pursuant to colloquy, he further charged:

"In enumerating the elements of the case, you were told that one of the elements necessary to be proved by the Government, and found by the jury, is that in making the alleged false representation, the defendant intended to defraud and so you are told that intent is a condition of the mind which is not always susceptible of direct and positive proof. It may be inferred from the actions and the words at the time and preceding the time of the doing of the act and in the administration of justice, it may be necessary to seek the intention with which one acts in doing what he does by drawing reasonable inferences from the words and the actions of the person involved, in the light of all the evidence in the case."

In our view, the charge was correct, was adequate for the guidance of the jury, and in substance, incorporated so much of the appellant's prayer as was justified in law. Certainly the court was not bound to adopt the appellant's theory of the case. In Robinson v. United States, 1914, 42 App.D.C. 186, 192, this court said:

"The elements of the offense are a false pretense or false representation by the defendant . . . knowledge by the defendant as to the falsity, reliance on the pretense or representation by the person defrauded, intent to defraud and an actual defrauding. It is for the jury to determine whether each of those elements has been established by the evidence, and the court is not authorized to invade the province of the jury by telling them that if certain facts are proved the intent to defraud is made out. [Citing cases.] *But this does not mean that one may prevent a jury from imputing to him an intent to defraud, where the evidence showed that he has obtained something of value from another by means of false representations, knowingly made with intent to induce the action taken by the other, by introducing evidence tending to show that he believed the other was receiving something of substantial value.* Such a rule would practically destroy the statute. Everyone is presumed to intend the natural and probable consequences of his acts, and, when misrepresentations are intentionally made to obtain something of value from another and those representations are acted upon by the other, it is for the jury to say whether the intent to defraud has been established. In other words, such evidence warrants the jury in inferring the existence of the intent." (Emphasis supplied.) Cf. Graham v. United States, 1951, 88 U.S.App. D.C. 129, 131, 187 F.2d 87, certiorari denied, 1951, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353.

Appellant mistakenly relies upon People v. Pillsbury, 1943, 59 Cal.App.2d 107, 138 P.2d 320, where the prosecution admitted that no case of false pretenses was presented and the sole question involved larceny by fraud. There the court pointed out "there is no evidence that [the defendant] used that car for any purpose of his own, or did anything with it inconsistent with his avowed purpose of finding a buyer for it. . . . He surrendered the car to the owner when the latter needed it for his own use, and

the owner at that time agreed that defendant might sell the car." Id., 138 P. 2d at page 322. The car was returned to the owner's agent. Clearly, on its facts, as well as on the question presented, the case has no application here.

Appellant argues that Potomac Distributors could not have been defrauded for the car on September 18, 1952, "had an equity of between $900 and $1000 and roughly five times the value of the two television sets." That fact is immaterial. Robinson v. United States, supra; 22 Am.Jur., False Pretenses, § 32; cf. United States v. Rowe, 2 Cir., 1932, 56 F.2d 747, 749, certiorari denied, 1932, 286 U.S. 554, 52 S.Ct. 579, 76 L.Ed. 1289; Kay v. United States, 1938, 303 U.S. 1, 5–6, 58 S.Ct. 468, 82 L.Ed. 607. He urges that the chattel mortgage to Potomac Distributors, as to the two television sets, must be construed as a conditional sales contract and since on that account appellant never received title to them, he could not have committed an offense within the language of the Code. Such circumlocution is irrelevant for the Code reads: "Whoever, *by any false pretense, with intent to defraud, obtains from any person anything of value. . . .*" is guilty. (Emphasis supplied.) Besides, appellant need not have received absolute title. Whitmore v. State, 1941, 238 Wis. 79, 298 N. W. 194, 195, 134 A.L.R. 872. And see Partridge v. United States, 1913, 39 App. D.C. 571, 581. He argues that it was error to admit evidence to show that there was a valid prior outstanding chattel mortgage in favor of City Bank to secure an indebtedness of more than $3000 of the purchase price of the car, and that such evidence varies the terms of a written instrument. It amounts to an argument that the appellant by deceit and willful prevarication may obtain delivery of two television sets and convert them to his own use, but when his victim has relied upon his misrepresentations and has believed them, the truth may not be shown if the fraud has culminated in a written instrument at variance with the facts. Such a position is untenable.

This appellant has sold two television sets, and apparently had taken payment therefor although he had no television sets to deliver to his customers. He could not get the sets from Potomac Distributors without offering security for his past due account as well as for his present purchase. In order to get them he lied. He represented that his car acquired at a cost of more than $4000 required only one further payment of $55. He now complains because his victim believed him when he lied. He argues that the misrepresentations were not material although the victim testified, and the jury could properly find, that he would not have parted with his goods except in reliance upon appellant's statements. "No one can be permitted to say, in respect to his own statements upon a material matter, that he did not expect to be believed; and if they are knowingly false, and willfully made, the fact that they are material is proof of an attempted fraud, because their materiality, in the eye of the law, consists in their tendency to influence the conduct of the party who has an interest in them and to whom they are addressed." Claflin v. Commonwealth Insurance Co., 1884, 110 U.S. 81, 95, 3 S.Ct. 507, 515, 28 L.Ed. 76.

He argues that there was no proof of an intent upon his part to defraud his victim. " 'Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud is presumed when the unlawful act, which results in loss or injury, is proved to have been knowingly committed. It is a well-settled rule, which the law applies in both criminal and civil cases, that the intent is presumed and inferred from the result of the action.' " This quotation from a challenged charge was found by the Supreme Court to be "unexceptionable as matter of law" in Agnew v. United States, 1897, 165 U.S. 36, 53, 17 S.Ct. 235, 242, 41 L.Ed. 624.

**26**

We have sufficiently dealt with the facts. "From these facts the requisite intent to defraud is presumed, and therefore, need not be proven in the absence of countervailing evidence. Materiality and reliance were conclusively established by evidence introduced at the trial, if indeed such proof were needed." Pence v. United States, 1942, 316 U.S. 332, 339, 62 S.Ct. 1080, 1084, 86 L.Ed. 1510.

Such principles announced in the cases cited and repeatedly applied in our courts control our decision that there was here no error affecting substantial rights.

Affirmed.

WILBUR K. MILLER, Circuit Judge (dissenting).

When the essential ingredients of the crime of false pretense have been accurately ascertained, and when irrelevant facts in the evidence have been identified as such and eliminated from consideration, I believe it will be apparent that the Government failed to make out a case for submission to the jury. It will then also appear, I think, that the trial judge erroneously refused to direct a verdict of acquittal, only because he mistakenly attributed significance to the fact that appellant's automobile was damaged in a collision which occurred "early in October,"—at least two weeks after September 18, the day he purchased the two television sets and the washing machine from Potomac Distributors.

*As to the ingredients of the offense.* While our false pretense statute does not in express language require that the person from whom the property is obtained should be defrauded thereby,[1] nevertheless the crime is not complete unless he is in fact defrauded. It was so held in Robinson v. United States, 1914, 42 App. D.C. 186, in accord with the general rule. 35 C.J.S., False Pretenses, § 26, p. 670. In order to convict under the statute, the Government must therefore prove that in making a false pretense the defendant intended to defraud the person from whom he obtained property, and that he did thereby defraud him. The trial judge recognized this, and charged the jury accordingly.

Nelson did make a false representation; but the question is whether there was evidence from which the jury could properly be permitted to infer that he intended to defraud, and to conclude that Potomac was thereby defrauded.

*As to the relevant evidence, which required acquittal.* During the first eight and one-half months of 1952, Nelson had been a substantial and constant customer of Potomac. In that period his purchases amounted to more than $25,000 and he had always paid within the permitted 30-day credit period.[2] But on September 18 his account, which then amounted to $1,697.87, included for the first time some charges more than 30 days old. When on that day Nelson wanted to buy on credit two television sets at $136 each, and a washing machine at $77.50, Potomac refused to make the sale unless he would give security for the total purchase price of $349.50, and would also secure the pre-existing indebtedness of $1,697.87.[3] Nelson agreed to give a lien on the articles being purchased and on his Packard automobile as well, and signed a note for $2,047.37. He executed a chattel deed of trust on the two television sets and the automobile, Potomac having purposely omitted the

1. Title 22, § 1301, D.C.Code (1951), as amended in 1953, provides:

"Whoever, by any false pretense, with intent to defraud, obtains from any person anything of value * * * shall, if the value of the property or the sum or value of the money or property so obtained * * * is $100 or upward, be imprisoned not less than one year nor more than three years * * *."

2. So said one of the complaining witnesses.

3. The only exact figure given in evidence was the amount of the note, $2,047.37. I arrived at the amount of the pre-existing debt, about which the witnesses were vague, by deducting from the face of the note the values of the three articles as given in the indictment: two television sets at $136 each, and a washing machine at $77.50.

washing machine in preparing the instrument. He told the Schneider brothers, principal proprietors of Potomac, that he owed a balance of only $55 on his car, when in fact he owed a lien debt of $3,028.08 to a local bank. This is the false pretense upon which the indictment and conviction were based.

Of course it was very wrong of Nelson to make this false statement. But whether it was felonious or not depends on two questions: (a) did he intend thereby to defraud, and (b) even if he did so intend, was Potomac actually defrauded?

Differing definitions of the word "defraud" probably cause the difference in opinion between the majority and me. They seem to think it means, in connection with a purchase, to make a false pretense in the process of obtaining goods even though the purchase price is well secured. I think the word means, in connection with a purchase, to make a false pretense as a result of which the seller is deprived of his goods or of the purchase price. The difference is particularly important in a case like this one where a purchaser is charged with defrauding a seller. A purchaser can be said to have defrauded the seller of his goods only if he intended to defraud him of the purchase price for which the seller was willing to exchange them. It seems to me to follow that a purchaser who makes a false statement in buying on credit has not defrauded the seller of his goods if he nevertheless amply secures the debt. False pretense cases concerning the obtaining of property but which do not involve a situation where the *purchaser* was indicted have little application to this case. The Robinson case, for example, was one where the *seller* was indicted and convicted. That decision is useful here only for its statement that there must be actual defrauding.

In considering the criminality *vel non* of the false statement, it must be remembered that the past due indebtedness of $1,697.87 is to play no part. That credit had already been extended generally, and with respect to it Potomac

parted with nothing on September 18. Nelson was only charged with defrauding Potomac by obtaining through false pretense the articles then delivered, which had a total value of only $349.50.

What was the actual value on September 18 of the property upon which Potomac took a lien, on the strength of which it parted with property worth $349.50? The bank collection manager, testifying for the Government, said that although on September 18 Nelson still owed the bank $3,028.08, he had on that day an equity in the car worth from $900 to $1,000. The mortgaged television sets were, I suppose, worth their price of $272. Adding to this the minimum equity in the automobile proved by the prosecution, it appears that Potomac had a lien on property worth at least $1,172 to protect a debt of $349.50. The proportion was more than three to one.

Such is the evidence as to what happened September 18, from which the jury was permitted to infer that Nelson then intended to defraud, and to conclude that he then did fraudulently obtain from Potomac the three articles purchased. As to intent, I suggest that it is wholly irrational to presume or infer that one intends to defraud when he buys goods on credit and safeguards that credit by giving more than triple security for it,— no matter if he does falsely pretend that the security is even greater. It is equally illogical to conclude that the creditor was thereby defrauded. For that reason, my opinion is that the proof I have outlined—which was the only pertinent proof—did not warrant the trial court in submitting the case to the jury.

The majority say the fact that the security was so ample is immaterial. In this connection they cite Robinson v. United States, supra, and refer to United States v. Rowe, 2 Cir., 1932, 56 F.2d 747. As I have already pointed out, the Robinson case involved an indicted *seller*. Robinson had sold practically worthless shares of stock and we held he could not escape the imputation that he intended his false representations to defraud by simply saying "he believed the other was

receiving something of substantial value." This is vastly different from the present case where the indictment is against a *purchaser* who amply secured the payment of the purchase price. In the Rowe case the Second Circuit simply said it had never accepted the rule that an actual defrauding is a necessary ingredient of the crime of false pretense. It is a general rule, however, and we accepted it years ago in the Robinson case. I do not understand the majority intend to' overrule that particular holding of that opinion, since they quote it and rely upon it. Moreover, I note the majority quote with approval a portion of the charge in which, *inter alia*, the trial judge told the jury that actual defrauding is an essential element of the crime.

*As to the irrelevant evidence, which produced conviction.* Why then did the trial judge let the case go to the jury? He knew an actual defrauding was necessary to conviction and, as I have said, so instructed the jury. And why, in the light of that instruction, and under Government proof which clearly showed. Potomac was not defrauded, did the jury convict? Principally, I think, because of a subsequent fortuitous circumstance which Nelson could not have anticipated on September 18, and which of course was not the result of his deliberate act.

This circumstance was that some two weeks or more after the goods had been obtained, the mortgaged automobile was damaged in a collision to an extent estimated at about $1,000. If the damage was not compensated for by insurance or otherwise, the accident practically destroyed Nelson's equity in the car. The bank seized the damaged automobile and disposed of it to a transferee, who evidently saw some equity still in it, as he paid the bank's debt. Potomac seems to have stood idly by while this was going on, without taking any steps to protect its lien, which was or should have been then of record. If damages were collected by or for Nelson from a tort feasor, Potomac's lien attached thereto. The record does not show whether such damages were or should have been recovered. It should be noted also that Potomac made no effort to enforce its lien on the television sets.

Aside from all that, however, the salient point is that the reduction in the value of the automobile caused by the collision could not properly be considered by the jury; the question was as to its value September 18, for it was that value which should have been considered in deciding whether. Potomac had been defrauded. Had the trial judge observed this distinction, he would have directed a verdict of acquittal, since he was aware of the necessity that there be actual defrauding. The judge made this clear when he said in a bench colloquy: "Until I heard that there had been a wreck and the car had been repossessed I thought maybe there was sufficient equity there to cover the loss sustained; and if that were the case there would be no defrauding." I have demonstrated there was more than sufficient equity September 18 to cover the credit then extended, so there was no defrauding, even though an accident later impaired the margin of protection.

In addition to the irrelevant proof of the collision damage, which should not have been received and without which an acquittal would have been directed, there was another irrelevancy in evidence which may well have played a part in moving the jury to its verdict: the pre-existing indebtedness. Because of Nelson's misrepresentation of his equity in the car, Potomac did not get, as it thought it was getting, security for both old and new debts with a margin of more than two to one. But, as has been shown, Potomac did get more than triple security for the goods which the indictment said were fraudulently obtained. It was therefore of first importance that the jury be told to disregard Potomac's failure to get the security for the pre-existing debt which it had been led to believe it was getting, and to consider only whether Potomac had been defrauded out of goods worth $349.50. The jury should also have been told the reason for the distinction, for without it the lay jurors

might have concluded—as apparently they did—that on September 18 Nelson defrauded Potomac with respect to the pre-existing indebtedness.

As I have said, Nelson was guilty of a moral wrong in falsely and grossly misrepresenting his debt to the bank, but in the circumstances he should not have been indicted and convicted because of it. The District of Columbia statute under which he was prosecuted does not make mere falsehood felonious; it only denounces as criminal a false pretense which was intended to defraud and which in fact had that result. Even a liar is entitled to the full protection of the law. I am afraid a grave injustice has been done in this case.