[Crim. No. 3214.   Second Appellate District, Division One.—January 8, 1940.]

THE PEOPLE, Respondent, v. CARL C. COON et al., Appellants.

Joseph L. Fainer for Appellant Coon.

Arthur C. Verge and Walter Q. Loehr for Appellant Zeismer.

Earl Warren, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

YORK, P. J.—Appellants were charged jointly in an indictment containing two counts with the crime of grand theft, and were found guilty by the court sitting without a jury of the crime of grand theft and also of the crime of petty theft (a lesser offense than that charged in count one of the indictment but necessarily included therein). These appeals are prosecuted separately by the appellants from the judgments of conviction and appellant Zeismer also appeals from the order by which his motion for a new trial was denied.

The main point presented by the briefs of appellants is that the evidence is insufficient to sustain the judgments in that there is no evidence of any unlawful intent.

The record reveals that appellant Coon was a member of the Santa Monica fire department, having been employed as such for a continuous period of over nine years; that ap-

pellant Zeismer was a police officer of the city of Santa Monica, and the defendant Powers was employed by the Santa Monica police department as a painter of pedestrian crossings. On Wednesday, November 23, 1938, a brush fire was raging in the hills close to the Roosevelt Highway in the Malibu district north of Santa Monica, and during the afternoon of that day the fire jumped across the highway and destroyed several cabins along the waterfront, including a cottage occupied by one Parmenter, and another occupied by two young airplane hostesses, Thelma Weld and Kathleen Kay. On the day following the fire—Thanksgiving Day, certain personal belongings of Mr. Parmenter, which the trial court found to be of a value of less than $200, and certain personal belongings of the airplane hostesses, which the court found to be of a value of more than $200, were found to be missing. These articles of personal property were returned to the Santa Monica police station on the Monday following the fire and the three named defendants were charged with their theft.

The record further reveals the undisputed fact that the personal property charged to have been removed from the cottages which were destroyed by fire was taken by appellants Coon and Zeismer, defendant Powers and one Kenneth Hubbard, a sergeant of police of the Santa Monica police department, on the evening of November 23, 1938, loaded into Coon's car and driven away; also that a certain automatic refrigerator was taken from one of the cottages by appellant Coon and defendant Powers and placed near a cafe known as "Mike's Place" operated by the witness Trujillo. Later that night this refrigerator was moved from that place by appellant Coon and defendant Powers and placed in the kitchen of the latter's home. Most of the property taken consisted of wearing apparel and bedding, including a fur coat and a fur rug, and after he had removed it from the scene of the fire, appellant Coon was directed by the chief of police of Santa Monica, Charles Dice, to "take the stuff to the life guard station". Appellant Coon complied with this direction, but an hour or so later he returned and took it away from the said station, put it in his bluish green La Salle sedan and took it to his home where he placed it in a pile on the floor of the living room therein. That night, at the request of Kenneth Hubbard, who was appellant Zeismer's superior officer, appellant Zeismer called at appellant

Coon's house and took some of the property away with him.

The next day, which was Thanksgiving Day, when appellant Coon was asked by the owners of the property what had become of it, he answered that he had brought it back to the scene of the fire and placed it in an overstuffed chair, apparently implying that it had been destroyed by the fire. On Sunday morning at the scene of the fire, he made the same statements to the owners of the personal property, and on Sunday afternoon he asked Mr. Trujillo to take the stuff back. Some time between Wednesday and the following Monday, appellant Coon and defendant Powers rented a garage and stored therein certain articles of the said personal property.

While it is earnestly contended by appellant Coon that he had legal possession of the articles which were taken from a hazardous place for the purpose of protecting them from the ravages of fire and that he never had any intention of keeping them as against the rightful owners, the facts above narrated are more compatible with the theory of guilt than of innocence. Moreover, such facts corroborate the statements made by appellant Coon to the officers to the effect that he and his codefendants intended to keep the property and divide it among them, although these statements were repudiated by him in his testimony at the trial. It must be concluded, therefore, that the evidence is sufficient to support the finding of the trial court that appellant Coon intended, at some time after he took the property and before it was returned, to appropriate it to his own use.

A review of the evidence introduced at the trial in the light most favorable to appellant Zeismer shows that he arrived at the fire on November 23, 1938, in company with his superior officer, Sergeant Kenneth Hubbard of the Santa Monica police department. After most of the goods had been removed from the two cabins occupied by Mr. Parmenter and the two airplane hostesses, appellant Zeismer and Sergeant Hubbard entered one of the cabins and Zeismer removed therefrom two bags or suitcases which he placed in the police car in which he had arrived at the scene of the fire, and from which he later removed them to the Coon car because they interfered with the two-way radio in the back of the police car. Appellant Zeismer remained at the scene of the fire until late that day, returning to his home in the evening. Around 8:30 o'clock that night, Sergeant Hub-

bard called him and asked him to go over to Coon's house to pick up the articles which said Zeismer and Hubbard had taken out of the fire. Appellant Zeismer at that time did not know where appellant Coon lived and Hubbard obtained the address for him, whereupon he proceeded to Coon's house and picked up some of the property and returned with it to his home, where Sergeant Hubbard later met him and checked the items which were then in Zeismer's automobile and instructed him to take them to the detective bureau. Appellant Zeismer went back on duty later that night and worked until 5 o'clock the next morning, when he went home and slept until approximately noon, had dinner about 2:30 o'clock on Thanksgiving Day and later visited his mother in Los Angeles returning around 10:30 o'clock when he retired. The next day—Friday, was his day off duty, and he went to Los Angeles and attended to some business affairs, and on Saturday, when he again reported for duty, he took with him and left at the detective bureau certain articles which he had taken from the fire and had stored in his garage.

Appellant Zeismer contends that the foregoing *résumé* of facts reveals (1) that he did not intend to appropriate any of the property which was salvaged from the houses of either Mr. Parmenter or the two airplane hostesses; (2) that the property was taken with the consent of the owners and was held for safekeeping and was turned over to the detective bureau at the first reasonable opportunity to do so; (3) that he was at no time guilty of any felonious appropriation of any property; and (4) that there is no evidence that the property which came into his possession, irrespective of felonious appropriation, was of a value in excess of $200.

While it is true that the evidence shows that the two suitcases or bags which appellant Zeismer removed from the scene of the fire contained articles of little value, there is evidence to the effect that he had in his possession and under his control during the time in question other personal property belonging either to Mr. Parmenter or to the two airplane hostesses, and that the personal property which was missing after the fire had an aggregate value greatly in excess of $200. It was further shown that, although it seemed to have been generally known among members of the police and fire departments of the city of Santa Monica that a search was being made for the personal belongings of Mr.

Parmenter and the two young women, appellant Zeismer did not make the slightest effort either to turn over to the proper authorities any of the property, which he had in his possession or under his control, or to apprise them of its whereabouts until several days had elapsed after the fire. It was not until the Monday morning following the fire that the personal property here involved was returned to its rightful owners. Lou Stedman, a motorcycle officer of the city of Santa Monica, testified that between 9 and 10 o'clock on the Sunday night (following the Wednesday when the fire occurred and the property was removed from the cabins), appellant Zeismer came to his house and said that "they had left some of this stuff over in his garage and what was he going to do about it"; and that "they" referred to officer Coon and Mr. Powers. Officer Stedman further testified: "I told him I didn't want anything to do with it and I didn't know anything about it and for him to take the stuff to the Chief just as quick as he possibly could, if he had any of it in his garage. . . . He said that they had put some stuff in his garage but I don't recall whether he said they were bags, suitcases or what. . . . Q. You told him as you have related here that you did not want anything to do with it? A. Yes. Q. Did he say anything else after that? A. No, he said something about he did not want to be a stool pigeon or something, and so at that time I told him, 'Well, the only thing I can tell you to do is that you lay your cards on the table and get that stuff back where it belongs.' "

On cross-examination, when questioned with reference to the foregoing conversation, officer Stedman testified: "Q. And did you not say to him: 'Well, you fixed it up fine, the only thing I can tell you is to go and get the stuff and take it to the Chief and lay your cards on the table.'? A. Yes, sir, to that effect. . . . Q. And he said: 'I have some stuff in the garage', and you said 'What stuff?' and he said 'That stuff that came from the fire.'? A. Yes, that is right."

Taking into consideration all the facts and circumstances presented by the record before this court, there is sufficient evidence to support the finding of the trial court that there was criminal intent on the part of appellant Zeismer to deprive the rightful owners of their personal property.

For the reasons stated, the judgments and the order appealed from are, and each of them is, affirmed.

Doran, J., concurred.

WHITE, J., Concurring and Dissenting.—I concur in the judgment affirming the conviction as to appellant Carl C. Coon, but I dissent from the judgment affirming the conviction of appellant Zeismer. As I view the record in this case, the evidence as to appellant Zeismer is extremely unsatisfactory as to either the issue of felonious intent or the value of the goods which came into Zeismer's possession being more than $200. The evidence clearly shows that appellant Zeismer arrived at the fire about 4 o'clock Wednesday afternoon, in company with his superior officer, Kenneth Hubbard, a sergeant of police of the Santa Monica police department. The fire was burning at that time and Zeismer and Hubbard carried out some articles of personal property, placing the same in a police radio car, from which, as was heretofore detailed, they were later removed and placed in appellant Coon's car, to be transported to the lifeguard station. Thus we see that the goods with which appellant Zeismer later became connected were transferred from the police car into the custody and keeping of appellant Coon. Later on the same evening Sergeant Hubbard called appellant Zeismer on the telephone and directed him to go to appellant Coon's house and pick up the articles which Zeismer and Hubbard had taken out of the fire earlier in the day. Appellant Zeismer was unacquainted with appellant Coon's address, whereupon Sergeant Hubbard obtained the address and Zeismer proceeded to the home of appellant Coon, picked up the property as directed by his sergeant, and returned the property to Zeismer's home, where Sergeant Hubbard later met appellant Zeismer and checked the items which were then in Zeismer's garage, after which he directed Zeismer to take them to the detective bureau. Sergeant Hubbard testified that when he checked the articles at the home of appellant Zeismer he found there all the property taken by him and Zeismer and noted the same as accounted for. In fact, it appears from the record that when Sergeant Hubbard went to Zeismer's home and asked the latter if all the property taken by Zeismer and Hubbard was there present, Zeismer answered in the affirmative, but asked Sergeant

Hubbard to check the same, which the latter did. It appears from the testimony that the detective bureau at Santa Monica was not open at night, and that the following day, Thanksgiving Day, Zeismer was not on duty in the police department, nor was he on duty the day following, on which latter day he came to Los Angeles to attend to some business. It is at once apparent that there was no attempt at secrecy on the part of appellant Zeismer. He was at all times aware that his superior officer, Sergeant Hubbard, knew that the goods in question were at Zeismer's home. On Saturday, the first day after taking the goods upon which appellant Zeismer worked, he arrived at the police station with his automobile containing the articles in his possession and delivered the same to the office of Captain Lingo, where they remained until Monday, when they were delivered to the owners.

It cannot be gainsaid in the present case but what the original taking of the property by appellant Zeismer and his superior officer was lawful and done for the purpose of protecting the same from the fire. It was therefore incumbent upon the prosecution to show a subsequent appropriation or conversion of the property before appellant Zeismer could be convicted. This the prosecution, in my opinion, under the facts hereinabove outlined, failed to do. I am impressed with the fact that the evidence in this case is not even open to two equally reasonable conclusions, viz., one of guilt and one of innocence, but preponderates in favor of innocence, showing as it does a course of conduct not at all compatible with the ordinarily surreptitious activities of a thief. It is true, as stated in the main opinion, that it seemed to be generally known among members of the police and fire departments of the city of Santa Monica that a search was being made for the personal belongings of Mr. Parmenter and the two airplane hostesses, but in that connection it should be pointed out that appellant Zeismer was not on duty during the succeeding two days following the fire and he was apprised of the fact that his superior, Sergeant Hubbard, knew where the articles in question were located.

We come now to a consideration of the value of the articles which came into possession of appellant Zeismer, and which formed the basis of count two upon which appellant Zeismer was found guilty of grand theft. A search of the record by

me for any testimony establishing the value of these articles proves fruitless. It is true that there is testimony in the record to the effect that all of the property lost by one of the airplane hostesses, Miss Weld, was reasonably worth $1,000, and there is evidence that the property belonging to Miss Kay which came into possession of appellant Zeismer was worth less than $50, but there is no testimony to show that the articles which came into possession of appellant Zeismer were worth $200 or any other sum in excess thereof.

The record is barren of any substantial evidence to show the existence of a conspiracy into which appellant Zeismer joined. The evidence falling far short of the *quantum* required in criminal cases to prove a felonious intent or appropriation on the part of the appellant Zeismer, or to establish that the value of the goods exceeded $50, the conviction as to him, in my judgment, should be set aside.

As to appellant Zeismer, in my opinion, the judgment and the order denying his motion for a new trial should be reversed and the cause remanded.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 19, 1940, as to appellant Coon, *and granted as to appellant Zeismer.*