[Crim. No. 3214.   Second Appellate District, Division One.—April 19, 1940.]

THE PEOPLE, Respondent, v. CARL C. COON et al., Defendants; FRED C. ZEISMER, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

THE COURT.—A rehearing was granted in this cause as to appellant Fred C. Zeismer in order that we might give further consideration to the claim that the evidence is insufficient to sustain the conviction and that the record failed to disclose proof showing the value of the property allegedly taken as charged in count 2 of the indictment. (36 Cal. App. (2d) 469 [97 Pac. (2d) 1006].)

In an indictment returned by the grand jury of Los Angeles County appellant and two others were charged jointly with the offense of grand theft in two counts. Following appropriate waiver of jury and submission of the cause to the court, appellant was found guilty of the offense of grand theft as charged in count 2 of the indictment and of the offense of petty theft, a lesser offense than that charged in count 1, but necessarily included therein. From the judgment and the order by which his motion for a new trial was denied appellant prosecutes this appeal. However, appellant failed to perfect his appeal from the order denying his motion for a new trial, and the matter comes to us upon appeal from the judgment alone.

Stating the evidence in the light most favorable to the prosecution, as we are required to do following a conviction, we find in the record testimony that defendant Carl C. Coon was a member of the Santa Monica fire department, where he had been employed for a continuous period of some nine years; that defendant Charles Powers was employed by the

Santa Monica police department as a painter of pedestrian crossings, while appellant Zeismer was a police officer of the city of Santa Monica. On Wednesday, November 23, 1938, a brush fire was raging in the hills close to the Roosevelt Highway in the Malibu district north of Santa Monica, and during the afternoon of that day the fire spread across the highway and destroyed several cabins along the water front, including a cabin owned by one Frank Parmenter and another occupied by two young airplane hostesses, Thelma Weld and Kathleen Kay. On the day following the fire—Thanksgiving Day—certain personal belongings of Mr. Parmenter which the trial court found to be of a value less than $200 and certain personal belongings of the airplane hostesses which the court found to be of a value of more than $200, were found to be missing. Subsequently, on the Monday following the fire, these articles of personal property were returned to the Santa Monica police station, and the three hereinbefore named defendants were charged with the theft thereof.

The record further reveals that various people, including policemen and firemen, removed articles of personal property from the fire-threatened cabins. The defendant Coon removed some of the property and took it to a life guard station which was located a short distance from the cabins. Appellant Zeismer arrived at the fire about 4 o'clock Wednesday afternoon, in company with his superior officer, Kenneth Hubbard, a sergeant of police of the Santa Monica police department. The fire was burning at that time, and appellant Zeismer and Hubbard carried out some articles of personal property, placing the same in a police radio car, from which they were later removed and placed in Fireman Coon's car, to be transported to the life guard station. Up to this time appellant Zeismer did not remove any goods from the scene of the fire. Later on the same evening Sergeant Hubbard called appellant Zeismer on the telephone and directed the latter to go to Fireman Coon's house and pick up the articles which Hubbard and Zeismer had taken out of the cabins earlier in the day. Appellant Zeismer was unacquainted with Coon's address, whereupon Sergeant Hubbard obtained the address, transmitted the same to appellant Zeismer, and the latter proceeded to the home of Coon, picked up the property as directed by the sergeant, and brought the same to Zeismer's home, where Sergeant Hubbard later met appellant and checked the

items which were then in Zeismer's garage, after which he directed Zeismer to take them to the detective bureau. Sergeant Hubbard testified that when he checked the articles at the home of appellant Zeismer he found there all the property taken by him and Zeismer and noted the same as accounted for. The record discloses that when Sergeant Hubbard came to Zeismer's home and asked appellant if all the property taken by him and Hubbard was there present, Zeismer answered in the affirmative, but requested Sergeant Hubbard to check the same, nevertheless, which the latter did. It appears from the testimony that the detective bureau at Santa Monica was not open at night, and that the following day, Thanksgiving Day, appellant Zeismer was not on duty in the police department, nor was he on duty the day following, on which latter day he was in Los Angeles attending to some personal business. There is evidence in the record that on Saturday, the first day upon which appellant Zeismer worked after the personal property came into his possession, he arrived at the police station with his automobile containing the articles in his possession and delivered the same at the office of Captain Lingo, where they remained until Monday, when they were delivered to the owners, as was all the other property taken from the cabins by the fire and police departments. While it is true that Captain Lingo testified he did not see the articles in his office until the Monday following, he, nevertheless, did not testify that the articles were not there, simply saying that he neither saw them brought there nor observed them therein until Monday. The following also appears in the record as part of the testimony of Captain Lingo:

"Q. Now, on Monday morning, the 28th, when you told Mr. Zeismer the girls were up there, he went to his desk and unlocked his desk and took out this cedar box" (which was part of the missing property), "did he not? A. That is right. Q. And at that time this cedar box of jewelry was in the traffic bureau of Mr. Zeismer's office under lock and key? A. That is correct. Q. Now, you don't know what other articles there were in the office in the traffic bureau? A. No, I do not. Q. You did not go in? A. No."

From the foregoing recital of the factual situation here presented, it is apparent that the original taking of the property by appellant Zeismer and his superior officer was lawful and done for the purpose of protecting the same from

the fire. It was therefore incumbent upon the prosecution to show a subsequent appropriation or conversion of the property before appellant Zeismer could be convicted. It is noteworthy that at all times during which the property was in appellant's possession, his superior officer, who, the testimony shows, was on duty Friday, Saturday and Sunday, had knowledge of the whereabouts of such property. It is suggested by the attorney-general that the evidence indicates that it was generally known among the members of the police and fire departments of the city of Santa Monica that a search was being made for the personal belongings of Mr. Parmenter and the two airplane hostesses; but in this connection it should be remembered that appellant Zeismer was not on duty during the succeeding two days following the fire, and he was also aware of the fact that his superior officer, Sergeant Hubbard, who was on duty, knew where the articles in question were located. The course of conduct pursued by appellant Zeismer is not compatible with the ordinary surreptitious activities of a thief.

The crime of theft requires a specific intent to steal—in this instance an intent on the part of appellant to convert the property to his use, with the consequent deprivation of possession and enjoyment by the owners thereof. This specific intent must be proved by the prosecution, the same as any other material fact in the case. It is not presumed from mere possession where, as here, the original taking was lawful. (*People* v. *Landman,* 103 Cal. 577 [37 Pac. 518]; *People* v. *Johnson,* 106 Cal. 289 [39 Pac. 622]; *People* v. *Maciel,* 71 Cal. App. 213 [234 Pac. 877].) ▪ The evidence in the case at bar fails to show any conduct or actions upon the part of the appellant justifying the inference that he either used, spent, wasted or otherwise appropriated the property to his own use. When appellant went to Fireman Coon's home and transported the property therefrom to his own garage he did so under orders of his superior officer, Sergeant Hubbard, and the latter satisfied himself that his orders were carried out by calling at appellant's home and checking the property. True, he told appellant to take it to the police station, which appellant did on the first day after he returned to work. At all times between Wednesday and Saturday, and even until Monday, when the property was returned to the owners thereof, appellant's superior officer knew of its where-

abouts, and that it was in appellant's garage where the sergeant had ordered it taken, and at which place he checked the same. This evidence falls short of the *quantum* required to prove the guilt of appellant beyond a reasonable doubt. ■ We attach no inculpatory significance to the conversation between appellant and Officer Stedman wherein the former made reference to his aversion to being a "stool pigeon". As we view the conversation in question, it contained no necessarily incriminating statements, and simply indicated that appellant did not desire to say or do anything which would reflect upon other people.

■ With reference to the conviction of grand theft as charged in count 2 of the indictment, we come now to a consideration of the value of the articles which came into the possession of appellant Zeismer and which formed the basis of said count. We are not referred by the attorney-general to any direct testimony in the record establishing the value of the property in question, and a search by us for any such evidence has proved fruitless. It is true that there is testimony in the record to the effect that all of the property belonging to one of the airplane hostesses, Miss Weld, was reasonably worth $1,000, and there is also evidence establishing the value of Miss Kay's property which came into possession of appellant Zeismer as being less than $50, but the record is barren of any testimony showing that the articles which came into possession of appellant Zeismer had a value of over $200. (Pen. Code, sec. 487.)

■ Respondent urges that the evidence establishes the existence of a conspiracy in which appellant joined, and that the latter was at all times acting in collusion with his codefendants. We find nothing in the record directly establishing the fact that appellant in any manner or through any contrivance positively or tacitly entered into a mutual understanding with his codefendants or anyone else to accomplish a common and unlawful design; nor is there any convincing evidence that appellant changed an original, lawful design in the taking of the property into a subsequent unlawful conspiracy.

Therefore, the judgment is reversed and the cause remanded for a new trial.